CHARLES H. ESTES, appellant, v. PHILIP LEIBSOHN, appellee.

No. 49173.

(Reported in 85 N.W.2d 15)

1174

SEPTEMBER 17, 1957.

D. M. Elderkin and J. J. Locher, Jr., of Barnes, Wadsworth, Elderkin, Locher & Pirnie, all of Cedar Rapids, for appellant.

David G. Bleakley, of Cedar Rapids, for appellee.

OLIVER, J.—Plaintiff, a licensed real-estate broker, brought action against defendant for a commission, upon a printed contract furnished by plaintiff, as follows:

"Cedar Rapids, Iowa July 25, 1950

"To Chas. H. Estes, Realtor:

"In consideration of your listing and endeavoring to sell the property described on the reverse side hereof, I hereby grant to you the sole and exclusive right to sell the same, and I hereby relinquish my right to sell said property. Should said property be sold or exchanged or a purchaser be found therefor by you, or by myself or by any other person, at the price and upon the terms specified on the reverse side hereof, or at any price or terms which I may authorize or accept, I agree to pay you 5% commission, payable at Cedar Rapids, Iowa,—and I will * * * execute * * * deed * * * with * * * abstract."

(The next three provisions are: if the property is exchanged, the broker may take a commission from each party; he shall have access to the property and assistance in making a sale; and he may take his commission from forfeited earnest money.)

"This contract shall terminate on the 25 day of Sept. 1950, except that if the property, within sixty days thereafter, shall be sold to any person to whom, to my knowledge, you had submitted it prior to said date, I will pay you the commission above specified.

"Accepted:

| July 25 1950 | Owner |
| | (s) Philip Leibsohn |
| (s) Chas. II. Estes | Wife or Husband " |

On the face of the instrument, the commission rate, dates and signatures were in writing. On the reverse side, "Price, $100,000.00, Terms arranged", together with the legal description of the property which was commonly known as Grand Hotel, Cedar Rapids, Iowa.

Defendant had previously owned this property for many years. April 7, 1949, he had conveyed it to his son-in-law, Jacob I. Schurman, of Chicago, for a stated consideration of "One Dollar and other valuable consideration." The parties to that deed testified the consideration was $70,000. Seventy-seven dollars in revenue stamps were affixed to the deed. This would be the correct amount for such consideration. The deed was record-

ed April 7, 1950, some months before the making of the listing contract here in question. In the fall of 1950 Joseph Sinaiko purchased the property for his children for $90,000, and Schurman conveyed it to them. Sidney Leibsohn, son of defendant, negotiated this sale. Plaintiff, who had no connection with the sale, claims the listing contract binds defendant to pay him a $4500 commission upon it.

Plaintiff testified he submitted an $80,000 offer from John Costas which defendant refused, and later a $90,000 offer, part cash; that defendant said he would talk about it to his son-in-law in Chicago but did not do so promptly and plaintiff secured an extension of the offer from Costas; that on September 24 defendant said he wanted $90,000 in cash; that plaintiff asked defendant to extend the contract a few days and the latter refused and went to Excelsior Springs for a week; that plaintiff's listing expired September 25; that a short time later he heard the property had been sold to Joe Sinaiko. It may be observed that plaintiff's action is not based upon or connected with the Costas offer.

Defendant, aged eighty-three at the time of the trial, testified that when plaintiff approached him about listing the property, he told plaintiff it belonged to his son-in-law (Schurman); that defendant did not know what Schurman wanted for it; that if plaintiff would come back in a week defendant would find out more about it; that defendant wrote Schurman who replied he wanted $100,000 for the property, "and that I could list it if I wanted to"; that defendant so advised plaintiff who shortly thereafter presented the printed listing form for signature; that defendant proposed to sign as agent for Schurman, but, at plaintiff's suggestion, signed his own name, only; that the only offer plaintiff presented was from Costas for $80,000 and defendant told plaintiff his son-in-law would not consider it; that he had nothing to do with the transaction in which the property was later sold by Schurman to children of Joseph Sinaiko and did not know Schurman was dealing with Sinaiko until after that deal was made.

Joseph Sinaiko purchased the property for his three children for $90,000 cash. He testified he did not know it had been listed with plaintiff or who then owned it, but heard it was for

sale, knew defendant had owned it and assumed he was its owner. Sinaiko contacted defendant's son Sidney, with whom he was friendly. Defendant and Sidney were associated in the furniture business. Sinaiko testified none of his dealings was with defendant and all were with Sidney as agent for the owner of the property and later with his own attorney.

September 18 Sinaiko made Sidney an oral offer for $90,000 cash for the property and gave Sidney his check for $5000. He testified: "At the time I gave the $5000 check as earnest money, Sidney Leibsohn did not tell me whether my offer of $90,000 would be accepted by the owner or not * * *." A day or two later Sidney telephoned him his offer had been accepted. Sidney did not tell him who owned the property. The negotiations between Sinaiko and Sidney, as agent for the sale of the property, were informal. In connection with Sinaiko's offer there was no writing other than his personal check for $5000 payable to Sidney, upon which there were no notations. Sinaiko testified that when he made the offer he did not know whether it was for himself individually or for his three children.

Nor was Schurman's participation in the contract of sale evidenced by writings. He testified the transaction between himself and Sinaiko was conducted through Sidney Leibsohn, orally; that prior to the time Sidney contacted him by telephone, September 27 or 28, he had not discussed with Sidney the possibility of the sale of this property or given him any authority or direction to make a sale of it; that in said telephone conversation with Sidney he approved and ratified the sale to Sinaiko made by and through Sidney for $90,000, and the terms thereof. Sinaiko's check to Sidney for $5000 was cashed by Sidney in a Cedar Rapids bank September 27. Sidney's $5000 check to Schurman was deposited by Schurman in a Chicago bank September 28. On that date Schurman consulted his attorney concerning the completion of the transaction. The deed from Schurman and wife to Sally H. and Arlene J. Sinaiko and Nadine S. Cole was executed October 28.

The listing contract having been furnished by plaintiff, any language therein which is not clear will be construed most strongly or strictly against him. Moreover, a listing contract will not be construed to defeat the right of one to sell his own

property, without liability for commission, if it will fairly bear a contrary construction. Hedges Co. v. Shanahan, 195 Iowa 1302, 1304, 190 N.W. 957.

Plaintiff's action is based essentially upon provisions of the listing contract: "Should said property be sold * .* * or a purchaser be found therefor * * * by myself or by any other person at * * * ($100,000) or at any price or terms which I may authorize or accept, I agree to pay you 5% commission * * *."

Count I of plaintiff's petition claims $4500 commission for the sale, "by and through Sidney Leibsohn, a son of the defendant" to Sinaiko for $90,000, "which price and the terms thereof were authorized by the defendant * * *." Count II makes the same claim based upon substantially the same allegations and also upon the charge that defendant's conveyance to Schurman in 1949 was without consideration and defendant was the actual, beneficial owner of the property and so held himself out to plaintiff.

The court rendered judgment against plaintiff from which he prosecutes this appeal.

I. Error is assigned to the finding of the trial court that defendant was not the owner, either legal or beneficial, of the Grand Hotel, after he conveyed it to Schurman. No detailed reference to the evidence upon this issue need be made. It was carefully reviewed and analyzed by the trial court whose findings of fact in this action at law have the effect of the verdict of a jury. The court's finding of this fact is supported by substantial evidence. Hence, it will not be disturbed upon appeal.

II. A like disposition may be made of the error assigned to the finding that Sidney Leibsohn was not the agent of defendant in the sale of the property. The testimony of several witnesses together with evidence of various circumstances furnishes sufficient support for this finding.

III. Plaintiff contends evidence Schurman owned the property was inadmissible over plaintiff's objections that it was an attempt to vary by parol the terms of the written listing contract. We hold its admission was not error.

The ownership of the property was an element pleaded in plaintiff's petition which sought recovery of a commission based upon the sale by Schurman to Sinaiko's children. Schurman's

1180

deed conveying the property to these purchasers was specifically pleaded. In another count of plaintiff's petition the validity of the prior conveyance by defendant to Schurman was assailed. It was alleged also that defendant was the actual, beneficial owner of the property and so held himself out to plaintiff. Having raised these propositions plaintiff may not complain of the admission of evidence bearing upon them.

Moreover, the evidence Schurman owned the property did not vary the terms of the contract. Liability for commission under the contract is not limited to the owner of the property listed. The evidence Schurman owned the property was pertinent to the issue whether the Sinaiko sale constituted performance of the listing contract on the part of plaintiff. If, under the circumstances shown in the record, that sale did constitute performance, the listing contract made defendant liable to plaintiff for a commission, irrespective of the ownership of the property. Rounds v. Alee, 116 Iowa 345, 89 N.W. 1098; Max Broock, Inc., v. Walker, Mich., 84 N.W.2d 336; 2 C. J. S. 1355, Agency, section 133(1)a; 2 Am. Jur., Agency, section 239.

The foregoing reasoning is applicable also to plaintiff's repeated contention that the signing of defendant's name on the line, over the printed word "Owner", would render evidence of Schurman's ownership inadmissible. In this connection it may be observed that defendant's signature is actually above the line over the printed words "Wife or Husband" and under the line for signature by "Owner."

IV. The ultimate question considered by the trial court was whether the Sinaiko sale was made at a price or upon terms authorized or accepted by defendant as required by the particular provisions of the listing contract upon which the action was based. Reference has been made to the finding Sidney Leibsohn was not an agent for defendant in the sale of the property. Therefore, Sidney's authorization or acceptance of price and terms would not be that of defendant. Nor does the record show defendant personally authorized or accepted the price and terms of the Sinaiko deal. He had no contact with Sinaiko during this period, did not know of Sinaiko's negotiations with Sidney and first heard of Sinaiko's purchase some time after the listing contract had expired.

The decision of the trial court states:

"Plaintiff contends that Schurman's approval is the approval of Philip Leibsohn. Schurman testified that he gave no approval to the Sinaiko offer until September 28, 1950, or a day or two before that. If this be a fact, then his approval came after the expiration of the listing period.

"Assuming Schurman actually did give his approval on or before September 25, 1950, would that be such an approval as the listing contract requires? Leibsohn testified he had no objection to any terms which would satisfy Schurman. But would that constitute an approval by Philip Leibsohn? Schurman was not an agent of Philip Leibsohn; Philip Leibsohn was the agent of Schurman. So how could Schurman's approval be Philip Leibsohn's approval?"

The court then defines "to approve" and "to authorize and accept" and states each expression contemplates the doing of an affirmative act.

We do not believe the decision in this case should rest in part upon the assumption that Schurman approved the Sinaiko offer on or before September 25. All the evidence upon this point is to the effect that Schurman first learned of it September 27 or 28, and actually approved and ratified it at that time. That the sale was not made during the period of listing, which ended September 25, is one of the grounds relied upon by defendant for affirmance of the judgment.

■ V. The decision of the trial court states as a conclusion of law: "Ratification operates upon the act ratified as though authority to do the act had been previously given, and relates back to the time when the unauthorized act was done." It cites 2 C. J. S., Agency, section 65, 2 Am. Jur., Agency, section 209. Based upon this conclusion the court found: "The property was sold to Joe Sinaiko about September 19 or 20, 1950, when Sidney Leibsohn accepted Sinaiko's offer, which sale was ratified by Schurman on September 27 or 28, 1950." It was on September 19 or 20 that Sidney telephoned Sinaiko his (Sinaiko's) offer for the property had been accepted by the owner. The ratification by Schurman on September 27 or 28 was made in the tele-

phone conversation with Sidney when Schurman learned Sidney, without authorization by Schurman, had proceeded to negotiate a sale of Schurman's property and to accept Sinaiko's offer.

The rule is well settled that such ratification would operate retroactively and would bind Schurman to the same extent as though Sidney's acceptance of Sinaiko's offer had been made in the first instance by Schurman's previous authority.

However, as stated in Restatement, Agency, section 101, "Ratification is not effective:

"* * *

"(c) In diminution of the rights or other interests of persons not parties to the transaction which were acquired in the subject matter before affirmance."

Cook v. Tullis, 85 U. S. (18 Wall.) 332, 338, 21 L. Ed. 933, 936, states: "* * * except where the rights of third parties have intervened between the act and the ratification. The retroactive efficacy of the ratification is subject to this qualification." Some other decisions which apply or recognize, this exception are: Long v. Osborn, 91 Iowa 160, 163, 59 N.W. 14; People ex rel. Goldschmidt v. Board of Education, 217 N. Y. 470, 112 N.E. 167, 169; Pape v. Home Ins. Co., 2 Cir., 139 F.2d 231, 235; Franke v. Jones, Tex. Civ. App., 170 S.W.2d 795, 798; Padgett v. Collins, 89 Ga. App. 769, 81 S.E.2d 309, 313.

In the case at bar the only parties to the Sinaiko transaction were Schurman and the Sinaikos. Plaintiff Estes and defendant Leibsohn were the sole parties to the commission contract which expired, in part, September 25. To make the ratification of the Sinaiko transaction retroactive to September 18 or 19, as to defendant, would revivify the commission contract which had expired between the times of Sidney's act and Schurman's ratification, and would create an alleged obligation against defendant which had not theretofore existed. Hence, the ratification of the Sinaiko transaction will not be adjudged retroactive as against defendant's rights and interests.

VI. That plaintiff had no connection with the finding of Sinaiko as a purchaser or the sale to him has already been stated. The Cumulative Supplement to 8 Am. Jur., Brokers, section 170, states:

██  "*Add new paragraph at end of section*: Where a real-estate broker has an exclusive agency and exclusive right to sell the property, and is entitled to his commissions even if the property is sold by the owner or someone else to one not procured by the broker, within the period covered by the listing, it has been argued that if the negotiations for the sale have been commenced within the period covered by the brokerage contract, although the actual transfer does not take place until after the expiration of the listing period, there is a sale which will entitle the broker to his commissions. However, the rule established or inferable from the cases seems to be that in the absence of collusion between the owner and the purchaser, or fraud practiced upon the broker, mere negotiations with a prospective purchaser for a sale not consummated within the listing period into a binding and enforceable contract to sell and to buy, do not amount to a sale within the meaning of such a brokerage contract so as to entitle the broker to his commissions, although such negotiations have eventually resulted in a sale made to such prospective purchaser with a deed executed and transfer made to him after the expiration of the listing period."

The text cites annotations in 160 A. L. R. 1049 and 27 A. L. R.2d 1419–1423. Lewis v. Dahl, 108 Utah 486, 161 P.2d 362, 160 A. L. R. 1040, enunciates this rule and differentiates the situation from those in which the broker procures a customer but the owner delays closing the deal until the listing period expires. It quotes with approval statements that during the listing period an owner is not precluded by his contract from negotiating with prospective purchasers and is not required to wait until the listing expires before entertaining negotiations.

In Mercantile Trust Co. v. Lamar, 148 Mo. App. 353, 362, 128 S.W. 20, 23, the owner testified his reason for delaying closing the sale was because he thought he would not be liable for a commission after the listing contract expired. Held, "the contract bound defendant to pay the commission if he sold the property during the period of the agency, but did not bind him to make a sale during said period unless a buyer was found by plaintiff. The utmost of his obligation to plaintiff was to allow it to find a purchaser while its agency continued and thereby earn a commission, or to pay plaintiff a commission not

earned by it in the event defendant found a buyer and sold during the period. Defendant would have been within his rights in refusing to sell until the expiration of the agency."

In the case at bar defendant agreed to pay plaintiff a commission should the property be sold or a purchaser be found during the listing period which terminated September 25 and for sixty days more if it were sold to a person previously contacted by plaintiff. A purchaser is not "found" before his status as such is brought to the attention of the person for whom he is found. Flynn v. Van Kleek, 91 Iowa 78, 80, 58 N.W. 1091; Baars v. Hyland, 65 Minn. 150, 67 N.W. 1148. Findings have already been made that defendant, who signed the listing contract, did not know Sinaiko had been "found" as a purchaser until some time after Schurman had accepted the Sinaiko offer. Schurman, who owned the property, first learned Sinaiko had been "found" September 27 or 28 at which time Schurman accepted Sinaiko's offer. The property was not sold nor was a purchaser found until that time. It follows plaintiff failed to prove he was entitled to a commission from defendant under the listing contract.

Other assigned errors have been considered and found not to entitle plaintiff to a reversal.

The judgment of the district court is affirmed.—Affirmed.

HAYS, C. J., and BLISS, WENNERSTRUM, GARFIELD, SMITH, LARSON, and PETERSON, JJ., concur.

THOMPSON, J., takes no part.