EDWARD V. CONNORS *vs.* WALTER J. DAGIEL *et ux.*

JULY 10, 1958.

PRESENT: Condon, C. J., Roberts, Andrews, Paolino and Powers, JJ.

114

PAOLINO, J.   This is an action of assumpsit brought by a broker to recover a commission.   The action was tried before a justice of the superior court sitting without a jury and resulted in a decision for the defendants.   The case is before us on the plaintiff's single exception to such decision.

The instant action is based on a written brokerage agreement dated April 28, 1956 and signed by plaintiff and defendants.   In the first paragraph thereof defendants appointed plaintiff to act as their "Sole And Exclusive Agent" and also granted him the "Exclusive Right To Sell" cer-

tain property on Benefit street in the city of Pawtucket owned by defendants for the sum of $11,800. They agreed therein to pay him a commission of 5 per cent of the full sale price of said property. This paragraph also provided among other things that plaintiff's authority to act as such agent "shall be irrevocable and remain in effect for a period of three months from the date hereof and thereafter until terminated in writing" by defendants.

In the second paragraph defendants agreed that if the property was sold by them or by a person other than plaintiff to anyone prior to the termination of the agency, or if sold within six months thereof to a person making contact with defendants or whose attention was called to the property by plaintiff prior to such termination "then in any such events my said Agent shall be entitled to receive the commission above stated."

It appears from the record that plaintiff advertised the property, placed his sign on the premises and showed the property to several prospective purchasers; that in June 1956 Helen Pawluch, who ultimately purchased the property through another broker, called plaintiff as a result of having seen his advertisement of a two-family house; that she requested the address of the premises so that she and her husband might look at it; that she told plaintiff if they were interested in it they would call him; and that plaintiff called her a week or ten days later at which time plaintiff found out the Pawluches were not interested in buying the house.

The plaintiff testified that he is a member of the Pawtucket Multiple Listing Service of the Pawtucket Real Estate Exchange; that he left three multiple listing contracts all filled out with defendants; that after the contracts had been signed he kept one and gave two to the Multiple Listing Service secretary, who kept one for the Service and mailed the other to defendants; and that he received, at his home address, a letter dated August 18, 1956 in an en-

velope postmarked August 29, 1956 notifying him that the agency was terminated. The letter is addressed to "Edward V. Connors, Pawtucket Real Estate Exchange, Old Colony Bank Building, Pawtucket, R. I." The letter contained a postscript indicating that the original notice of termination, which as appears later herein was mailed to plaintiff at the office of the Pawtucket Multiple Listing Service, had been returned to defendants marked addressee "Unknown."

The defendant husband testified that he had received a letter dated May 2, 1956 from the Pawtucket Multiple Listing Service advising him that they had received the contract in question; that he mailed a letter dated August 18, 1956 addressed to "Mr. Edward V. Connors, Pawtucket Real Estate Exchange, Old Colony Bank Building, Pawtucket, R. I." terminating the agency; that the envelope in which the letter was mailed was postmarked August 20, 1956; that said letter was returned to defendants marked addressee "Unknown"; and that a day or two later he mailed another letter addressed to plaintiff's home notifying him of the termination of the agency.

It appears from the evidence that on August 21, 1956 defendants appointed Edwin L. Price, another real estate broker, to sell their property; that on August 23 this broker accepted a deposit from the Pawluches and on August 24 a purchase and sale agreement was executed between defendants and the Pawluches for the sale of the property for $11,000; and that on August 31, 1956 it was conveyed to the Pawluches.

Mr. Pawluch testified that his wife had contacted Mr. Price in May 1956 about another house which Mr. Price had for sale but in which they were not interested; that at that time she told Mr. Price to contact her when he had a house located on Benefit street to sell; that Mr. Price contacted Mrs. Pawluch on August 23, 1956 with reference to the house owned by defendants; that they went with

Mr. Price to look at the house; that they gave him a deposit on the same day; and that Mr. Connors' sign and Mr. Price's sign were on the house. Mr. Pawluch also testified that he lived a few blocks from the house in question; that he went by it every day and had seen plaintiff's sign on the house prior to August 23, 1956; and that the first time he had seen defendants was in the bank at the time of the closing of the transaction on August 31, 1956. The plaintiff admits that he never showed this property to the Pawluches and that he never mentioned their name to defendants. The defendants also testified they had never met the Pawluches until the day of the closing at the bank.

In all three counts of his declaration plaintiff alleges that he is entitled to a commission of 5 per cent of $11,800, the sale price specified in the written agreement. However, at the trial in the superior court he stated that he was claiming a commission of 5 per cent of $11,000, the amount for which the property was actually sold. On the other hand defendants claimed then, as they do now, that plaintiff was not entitled to any commission.

After observing that the contract was drawn by plaintiff, and after finding that plaintiff did not bring about the sale for the price named in the contract, the trial justice rendered a decision for defendants on the ground that the instant case was governed by *Brown* v. *Adams,* R. I., 69 Atl. 601. He concluded that on the facts before him and under the law set forth in the *Brown* case, plaintiff could not recover.

The plaintiff contends that he is entitled to a commission of 5 per cent of the amount for which the property was sold. He argues that this case is not governed by the law set forth in *Brown* v. *Adams, supra,* and that the cases are factually distinguishable in that, among other things, no exclusive agency or exclusive right to sell was involved in the Brown case. He also contends that where an agency is to terminate by notice, the notice must reach the agent,

and that in any event he was entitled to a commission under that portion of the second paragraph of the contract which provides that if the property is "sold within six (6) months following the termination of this Agency, to a person making contact with me or whose attention was called to said property by my said Agent prior to said termination, then in any such events my said Agent shall be entitled to receive the commission above stated."

The plaintiff's main contention is that where an exclusive right to sell is granted, the owner obligates himself to keep the property available for the broker to sell until the contract is legally terminated; that if the owner allows the property to be sold during the continuance of the contract by himself or by anyone else, he renders performance by the broker impossible and therefore breaches the contract and consequently the broker is entitled to damages for such breach. He cites *Harris* v. *McPherson*, 97 Conn. 164, to support such contention. Accordingly he argues that defendants in the instant case breached the contract by selling the property through Mr. Price prior to the time notice of termination was received by plaintiff, and that therefore he is entitled to damages in an amount equal to 5 per cent of the price for which the property was sold.

On the other hand defendants contend that the instant action is based on an express contract; that such contract explicitly gave plaintiff the sole and exclusive agency and the exclusive right to sell the property "for the sale price of $11,800.00"; and that there is no language therein authorizing a sale at a lesser price. Moreover, they further contend that under the provisions of the second paragraph they were free to sell the property for less than $11,800 either directly or through anyone else, even during the period of the agency or within six months following the termination thereof, in the absence of fraud, collusion, or modification of the agreement; and that plaintiff, who prepared the agreement, failed to use language necessary to entitle

him to a commission under the provisions of the second paragraph of the form agreement based on a sale at any price.

In support of his position plaintiff cites *Melzner* v. *Toman,* 57 N. D. 639, where the court affirmed a judgment in favor of the broker. However, in that case, which is factually similar to the case at bar in certain material respects, the court construed the contract more strongly against the owner who had in effect drawn the contract and who was the defendant in that action. The court said at page 644: "In the contract the defendant does not limit liability to pay one half of the commission to cases where he himself procured a buyer for $2,600 or over. He says he will pay one-half of the commission 'if I find a buyer myself.' He does not say a 'buyer for $2,600 or over.' He does not limit himself to any specified purchase price, he drew the contract himself, and the term 'said purchase price' is merely the basis for computing the commission."

In the instant case the trial justice based his decision on the express contract. He found that plaintiff was given an exclusive agency and an exclusive right to sell said property for a fixed sum, namely, $11,800. Implicit in his decision is a finding, based on his construction of the second paragraph, that defendants obligated themselves to pay "the commission above stated" in the event that the property was sold for $11,800 by them or by any person other than plaintiff to anyone prior to the termination, or within six months following the termination of the agency, to a person making contact with defendants or whose attention was called to said property by plaintiff prior to said termination.

Unless the trial justice erred in so construing the contract, it is clear that the cases cited by plaintiff are not in point. Moreover if we adopt the interpretation given to the contract by the trial justice, plaintiff's contention that the contract in *Brown* v. *Adams, supra,* did not involve an

exclusive agency or an exclusive right to sell becomes unimportant in determining the issue in the instant case.

After carefully examining the record here we cannot say that the trial justice's interpretation of the language in the second paragraph is erroneous. It is well settled that if the language of a written contract is ambiguous it is ordinarily interpreted more strongly against the writer thereof. *Armfield v. Frank N. McClure, Inc.*, 77 R. I. 390, 394; *Muirhead v. Fairlawn Enterprise, Inc.*, 72 R. I. 163, 172. As was said in *McElhinney v. Belsky*, 165 Pa. Super. 546, at page 550: "Since the printed form of contract was provided by McElhinney, it should be construed most strongly against him. ' * * * (d) Where words or other manifestations of intention bear more than one reasonable meaning an interpretation is preferred which operates more strongly against the party from whom they proceed, unless their use by him is prescribed by law': Restatement, Contracts, §236."

We agree with the distinction between an exclusive agency and an exclusive right to sell noted by the court in *Donahue v. Reiner Co.*, 46 R. I. 302, 304. However, in the instant case the contract is clearly open to a construction that defendants, under the provisions of the second paragraph thereof, agreed to pay said commission only if the property were sold for $11,800. Since the contract was prepared by plaintiff, it was within his power to express himself clearly if he intended to obligate defendants to pay a commission even if they sold the property for less than the fixed price of $11,800. In our opinion the trial justice did not err in construing the contract more strongly against plaintiff. *Armfield v. Frank N. McClure, Inc., supra.*

Under this interpretation of the contract, it is clear that the trial justice did not err in deciding for the defendants on the ground that the case at bar is governed by the law set forth in *Brown v. Adams, supra.* For this reason we do not deem it necessary to determine whether the agency was terminated prior to the sale or whether the property

was sold within six months following said termination "to a person making contact with me or whose attention was called to said property by my said Agent prior to said termination * * *."

The plaintiff testified that sometime prior to the execution of the contract the defendants stated they realized that they had to make some concession on the price because of the heating system. It appears from the record that this testimony was admitted by the trial justice prior to the introduction in evidence of the contract itself. In our opinion this evidence is irrelevant since the contract was thereafter introduced and such testimony cannot vary its terms. It is clear that the trial justice did not err in giving no weight to such testimony.

The plaintiff's exception is overruled, and the case is remitted to the superior court for entry of judgment on the decision.

*Goodman & Gorin, Jordan Tanenbaum,* for plaintiff.

*Woolley, Blais & Quinn, John S. Lennon,* for defendants.