PAUL STROMBERG and BONNIE MAE STROMBERG, appellees, v.
HARRY C. CROWL, d/b/a HARRY C. CROWL COM-
PANY, appellant.

No. 51493.

(Reported in 132 N.W.2d 462)

JANUARY 12, 1965.

Porter, Heithoff & Pratt, of Council Bluffs, for appellant.

Richard C. Turner, of Council Bluffs, for appellees.

MOORE, J.—This is a law action to recover the amount of a real-estate broker's commission previously paid by an escrow agent to defendant without plaintiffs' consent. Trial to the court resulted in a holding the contract granting the real-estate broker exclusive right to sell did not entitle him to a commission where plaintiffs sold their real estate themselves. Defendant appeals from judgment of $715 and interest for plaintiffs.

On Friday, December 12, 1958, plaintiff Paul Stromberg went to the Nonpareil Newspaper in Council Bluffs where he purchased and paid $1.62 for the following ad to be run in the newspaper on December 12, 13 and 14: "80 acre farm by owner. 7 miles north of town, Ph. 3-6039." The number was plaintiffs' home telephone at the farm.

The farm was being bought on contract from defendant. Plaintiffs made the payments at his office. He also sold them insurance on the farm.

Upon leaving the Nonpareil Stromberg went to defendant's office where he signed a listing contract which was furnished by defendant or one of his sons. As material here, it provides:

"In consideration of your agreement to use your efforts to find a purchaser, I hereby grant you the exclusive right for 90 days from date hereof, to sell the above described property for the sum of $15,000 payable as follows: Cash to cont. bal. or submit or upon any other price, terms of exchange to which I consent. If said property is sold before the termination of this agreement, I agree to pay you a commission of five percent on the selling price. In case of sale I will furnish an abstract showing merchantable title, and make conveyance by warranty deed.

You are hereby authorized to place a 'FOR SALE' sign on said property and to remove all other signs."

The following day, December 13, Mrs. Harold Beckner in answer to the newspaper ad phoned Mrs. Stromberg about the sale of the farm. The next Saturday Mr. and Mrs. Beckner visited the farm and according to Stromberg agreed to a purchase price of $14,300. Beckner was unable to fix the time when the price was finally agreed upon. Crowl testified there was some discussion about price in his office when Beckner in the presence of Stromberg later signed an offer to buy. Beckner did not see Crowl before or after the signing of the offer. It was accepted by Stromberg at that time and shortly thereafter when presented to Mrs. Stromberg by Crowl's son. A $500 down payment was made with the offer by Beckner. Crowl used most of this sum for taxes, abstract continuation, insurance premiums, interest on his contract and revenue stamps for a deed executed by him. The balance was ultimately paid to plaintiffs.

Crowl testified he made several phone calls attempting to interest prospective purchasers in the farm. The only two he remembered by name were his daughter and son-in-law. No other effort was claimed by him except some discussion with Beckner.

Beckner financed the farm purchase through First Federal Savings and Loan Association in Council Bluffs where the deal was closed on January 19, 1959, in the office of its president, Einer Juel. The Strombergs and Beckners were present but Crowl was not. In addition to his contract balance Crowl had advised Juel to withhold $715 as a commission. Stromberg's refusal to allow this item resulted in an agreement that sum would be held in escrow by Juel until Stromberg and Crowl could settle the dispute.

Some months later, without the knowledge or consent of Stromberg, Crowl prevailed upon Juel to release the funds to him. This action resulted.

Defendant asserts the trial court erred in (1) concluding the contract did not deprive the owner of the right to sell the property during the listing period without being obligated to pay the broker's commission, (2) finding defendant's services were merely incidental to a transfer of title and (3) entering judgment for more than prayed for in plaintiffs' petition.

I. In recent years much confusion has arisen in real-estate brokerage commission cases apparently due to an attempt by drafters of listing agreements to deprive the owner of his right to sell his own property as an incident of ownership, without liability for a broker's commission if the listing contract will fairly bear a construction consistent with such right.

"Exclusive agency", "exclusive right to sell" and "sale by anyone" listing contracts of many forms have come into use in an effort to subject the owner to a real-estate commission when he sells the property himself. Some drafters seem unwilling to use clear and understandable language depriving the owner of his right to sell. The resulting divergent holdings of many jurisdictions are considered in 37 Iowa Law Review 350, in an article by William E. Wallace, entitled "Promissory Liability under Real Estate Brokerage Contracts", and a recent annotation at 88 A. L. R.2d 936 designated " 'Exclusive right to sell' and other terms in real-estate broker's contract as excluding owner's right of sale." See also 12 Am. Jur.2d, Brokers, sections 226, 227.

In the Iowa Law Review the author at page 370 draws this conclusion: "It seems preferable, however, to require the use of clear and easily understood language, as is done in Iowa, if it is desired to so restrict the owner."

At page 948 of 88 A. L. R.2d the annotator lists Iowa among the many jurisdictions where the absolute exclusion of an owner's inherent right to sell his property by his own efforts, without liability to any broker, can be effected only by a contract so providing in unequivocal terms or by necessary implications.

In Ingold v. Symonds, 125 Iowa 82, 85, 99 N.W. 713, 714, where the listing contract gave the agent exclusive authority to find a purchaser for property within a specified time we hold the owner who sold the property during that period not liable for the commission and say: "The right of an owner to sell his own property is an implied condition of every contract of agency, and, unless expressly negatived, will prevail."

The listing contract in McPike v. Siver, 168 Iowa 149, 150 N.W. 52, granted the broker "the exclusive right to sell" and provided for payment of commission in case the broker should procure a purchaser or if the owner "should in anyway obstruct

or prevent a sale." We there hold the owner who sold the property himself during the term of the listing contract was not liable for claimed commission. At pages 151, 152 of 168 Iowa, pages 52, 53, 150 N.W., we say:

"If in the Ingold case the principal, who had given to his agent the exclusive right to find a purchaser, had nevertheless the implied right to find a purchaser himself, it follows logically that if he had conferred upon his agent the exclusive right to sell, he had the same implied right to sell the property himself. This implied right was not 'expressly negatived' in the contract under consideration. * * * So salutary is the rule of the implied reservation of right of the principal to sell his own land that no contract should be construed to its defeat if it will fairly bear a construction consistent therewith."

In Hedges Co. v. Shanahan, 195 Iowa 1302, 190 N.W. 957, we hold an owner did not relinquish his right of sale by a contract giving the broker "the exclusive right to sell" for a stated term, and providing for the payment of commission in case the property was sold by the broker "or anyone else during period herein named."

After stating the legal principles established in the Ingold and McPike cases it is said: "Each case of this character must be bottomed upon the special language of the contract in suit with a careful regard to the controlling legal principle stated herein." (Loc. cit. page 1304, 195 Iowa)

█ Of course language in a contract for commission which is not clear must be strongly construed against the one who supplied it. Estes v. Leibsohn, 248 Iowa 1173, 1178, 85 N.W.2d 15, 18.

█ Applying these now well established principles to the listing contract involved here, we conclude it does not by clear and unequivocal language negative plaintiffs' right to sell the farm themselves without liability to defendant for a commission.

We recognize in Merle O. Milligan Co. v. Claiborne, 213 Iowa 1088, 240 N.W. 694, and Estes v. Leibsohn, supra, a clear provision requiring payment of commission to the broker even if the sale is by the owner will be enforced. At page 941, 88 A. L. R.2d, a suggested form for such a provision is set out.

Defendant relies upon Metcalf v. Kent, 104 Iowa 487, 73 N.W. 1037, but it is not controlling. As pointed out in the McPike and Hedges cases the court construed the contract there as requiring payment of commission in any event.

II. Defendant relies strongly on Ladd v. Teichman, 359 Mich. 587, 103 N.W.2d 338, which holds a broker with a contract containing exclusive sales rights for a reasonable time may recover his commission although the owner sells the property if he (the broker) shows substantial performance of the duties imposed upon him by the contract. Defendant therefore argues the trial court erred in finding his services were merely incidental to a transfer of title. Our holding in Division I makes consideration of this contention unnecessary. We may observe, however, the trial court's finding is supported by substantial evidence and is binding on us. No citation of authority is necessary. See Rule of Civil Procedure 344(f)1.

III. Plaintiffs' petition prays for $700, with five percent interest per annum from January 20, 1959. The judgment entered is for $715, the amount proved by plaintiffs, and for interest on $117.56 starting January 20, 1959, and on the balance of $574.14 starting July 9, 1959. The difference on interest starting dates is due to some claimed withholding by defendant of some funds due plaintiffs on the day the sale was completed. July 9, 1959, is the date when defendant wrongfully persuaded Juel to release to him the $715 held in escrow.

Plaintiffs admit they made some mistake in calculating the amount due them and their recovery cannot exceed the amount they requested. It is elementary no more relief can be granted than is requested. Rauch v. Senecal, 253 Iowa 487, 490, 112 N.W.2d 886, 887.

If money is wrongfully obtained or held, interest begins to run on the demand from the time of taking or wrongful withholding. Weaver Construction Co. v. Farmers Nat. Bk., 253 Iowa 1280, 1292, 115 N.W.2d 804, 811. Interest here starts on the date of the wrongful taking, July 9, 1959.

The correct amount of plaintiffs' judgment against defendant is $700 plus five percent interest from July 9, 1959. Five percent is fixed by Code section 535.3.

As so modified the judgment is affirmed and the case is remanded to the trial court for the entry of the correct amount of the judgment and interest, in accordance with our holding.— Modified, affirmed and remanded.

All JUSTICES concur.