249 A.2d 893.

ANTHONY ZIFCAK *vs.* JESSE H. MONROE *et al.*

FEBRUARY 13, 1969.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. This is a suit by a real estate broker for a commission allegedly due him from the defendants. A jury waived trial in this case was held before a justice of the superior court. At the conclusion of the presentation of the plaintiff's evidence, the defendants without either resting or waiving their right to present evidence moved for a dismissal of the complaint and that a judgment on the merits be entered in their favor.[1] The motion was granted and the

---

[1] A portion of Rule 41 (b) (2) of the superior court rules of civil procedure gives a trial judge in a non-jury case, on a motion for an involuntary dismissal interposed at the conclusion of the plaintiff's evidence, the power to weigh and evaluate the evidence in the same manner as if he were making his findings of fact at the conclusion of the case. In *Rowell v. Kaplan,* 103 R. I. 60, 235 A.2d 91, this court specifically pointed out that when a trial judge is considering such a motion, he is under no obligation, as he would be on a motion for a directed verdict, to review the evidence in a light most favorable to the plaintiff and give him the benefit of all reasonable inferences flowing therefrom. Here the trial justice properly applied the rule.

plaintiff is before us on his appeal from the judgment which was thereupon entered for the defendants.

Jesse H. and Donald T. Munroe, the defendants, are brothers. Jesse lives in North Smithfield, Rhode Island. Donald is a resident of Gloucester, Massachusetts. In 1962 the Monroe brothers were joint owners of a large parcel of real estate located in Burrillville. Their tract consisted of 20 acres with a portion thereof abutting on a large body of water called Spring Lake. Jesse testified that he was authorized to act for his brother in any negotiations relating to the sale of their property.

The plaintiff is a duly licensed real estate broker. He has been actively engaged in this occupation for over 30 years. On July 7, 1962, plaintiff prepared a brokerage agreement on one of his printed forms whereby he was hired to sell defendants' property. The portions of this document which are pertinent to this appeal read as follows:

> "To ANTHONY P. ZIFCAK, S.E.C.
>
> Date July 7th 1962
>      "For and in consideration of One Dollar ($1.00) the receipt of which is acknowledged I hereby appoint you exclusive agent to make sale of the real property herein described on reverse side for the price of $35,000.00 and you are hereby authorized to accept a deposit to be applied on the purchase price, and to excute a binding contract for sale on my behalf.
>      "* * *
>
> · ."This contract to continue until terminated by me giving unto you as agent 15 days notice in writing."[2]
> /s/ Jesse H. Monroe
> /s/ Donald T. Monroe
>            By J. H. Monroe

---

[2] Regulations issued by the director of business regulation and approved by the Rhode Island real estate commission pursuant to G. L. 1956, §5-20.5-5, as amended, bars the use of this type of clause in any brokerage agreement executed on and after August 2, 1965. Section 1 of these rules provides that a definite expiration date shall be contained in all such

While the instrument speaks of appointing Zifcak as the exclusive agent, a reading of the entire document makes it clear that plaintiff was given the exclusive right to sell[3] defendants' premises. The plaintiff's office record shows that during the balance of 1962 and the entire year of 1963 plaintiff's sales personnel showed the Spring Lake property to prospective purchasers a grand total of five times. In August 1962, a Mr. Denicamp, who worked for the Woonsocket branch of the Y.M.C.A., looked at the property. During the spring of 1963, plaintiff's employee brought interested individuals to this location on four separate occasions.

On January 10, 1964, defendant Jesse sent a letter to plaintiff, the relevant part of which reads thus:

> "This is to inform you that I wish to terminate on January 31, 1964 our contract dated July 7, 1962.
>
> "This notice more than covers the agreement of fifteen days notice in writing.
>
> "Yours truly
> /s/ Jesse H. Monroe"

The plaintiff acknowledged the receipt of this communication.

On February 6, 1964, another employee of the Woonsocket "Y" telephoned plaintiff's office. He informed the salesman on duty that his organization was looking for a new site upon which it could conduct its day camp activities. The salesman showed the employee about four different locations, including the Monroes' 20 acres.

---

agreements and the owner shall not be required to notify a broker of his intention to terminate. The director of business regulation is the real estate broker licensing authority in this state.

[3] We noted the difference between an "exclusive agency" and an "exclusive right to sell" in *Donahue v. Reiner Co.*, 46 R. I. 302, 127 A. 359. When there is an exclusive agency, the owner is not precluded from selling the realty himself but is only prohibited from appointing another agent. However, when an exclusive right to sell the property is awarded, the owner is liable for the commission even if he should effect the sale himself. Here Zifcak had an exclusive right of sale.

A year and a half later, in September 1965, a committee composed of certain members of the "Y's" board of directors went to Burrillville and inspected defendants' land together with the numerous buildings located thereon. Although a saleslady employed by plaintiff was present as the committee toured the property, the record shows that all negotiations relative to the eventual sale were conducted by officers of the Y.M.C.A. with defendant Jesse.

In May 1966, plaintiff, who at one time had been a director of the Y.M.C.A., learned that defendants were selling their realty to the "Y" and he commenced this litigation by attaching the property. The actual sale, however, was not consummated until September 1966. The record shows that the "Y" paid defendants $43,000 for their property.

In finding for both defendant brothers, the trial justice held that Jesse's 1964 letter effectively revoked plaintiff's authority to act on behalf of himself or his brother Donald. The trial court further found that the revocation was made in good faith without any intention of depriving plaintiff of a commission.

In our opinion the superior court was correct in rejecting plaintiff's suit. While plaintiff originally maintained that both brothers were liable for his commission, in oral argument he conceded that Jesse's letter terminated the broker's authority to act for this defendant, but contended that Jesse's failure to add anything to his signature which would show that he was also signing this communication for his Massachusetts brother is fatal to Donald's defense and that Donald remains liable for the six per cent commission set forth in the July 1962 agreement, to wit, $2,100. We disagree.

The sole and decisive issue before us is whether or not Jesse's letter effectively revoked plaintiff's authority to act for either brother.

Our determination of the legal efficacy of the notice sent

by Jesse can be made from an examination of the stipula-
tion in the exclusive right of sale agreement which required
that the broker be given 15 days notice of the termination
of his agency. The language used there is patently ambigu-
ous. It states that the agreement is to continue until "ter-
minated by me" giving the broker the requisite written
notice. It is well settled that if the terms of an agreement
are doubtful and uncertain, they shall be construed most
strongly against the author thereof. *Connors* v. *Dagiel,* 88
R. I. 113, 143 A.2d 297; *Russolino* v. *A. F. Rotelli & Sons,
Inc.,* 85 R. I. 160, 128 A.2d 337. Since Zifcak prepared the
brokerage agreement, it shall be interpreted against him.

A study of the record makes it obvious that plaintiff has
had long experience in his chosen field of endeavor. It was
within his power, if he so desired, to expressly provide that
his exclusive right to sell the Spring Lake site could not be
revoked until both brothers notified him of their desire to
sever the relationship then existing between the parties.
Instead, he chose to use the word "me" instead of "us" and
he shall be held to his choice of language. We therefore
hold that the notice sent by Jesse complied with the terms
of the July 1962 agreement and thereby effectively can-
celled the agreement then in effect between Zifcak and the
Monroe brothers. They were free to sell the property free
of claim by plaintiff for a commission.

We further believe that plaintiff's conduct after he re-
ceived Jesse's letter indicated that he had accepted it as
ending any rights he might possess under the brokerage
agreement. Zifcak admitted that upon receipt of the letter,
he made no protest nor did he contact either defendant.
The record is completely devoid of any evidence that during
the four-year period from July 1962 to September 1966,
plaintiff ever communicated with defendant Donald. The
vice chairman of the committe which toured defendants'
land in September 1965 testified he was never quoted the

$35,000 figure set forth in the brokerage agreement—even though plaintiff's saleslady was present on the premises at that time. Certainly, if plaintiff still considered the 1962 agreement to be viable in September 1965, someone in his sales force would have made the committee aware of the $8,000 saving that would accrue to the organization if the "Y" did business with plaintiff as the duly authorized representative of defendants, especially since the agreement gave him the right to execute a binding agreement for the sale of the premises.

A study of the amended complaint filed by plaintiff in September 1966 shows that his allegations there are at variance with the position he now espouses. This pleading alleges that plaintiff had, in accordance with his agreement, procured a ready, willing and able buyer for defendants' Spring Lake property but that "The defendants thereupon, wrongfully revoked the plaintiff's authority and proceeded to consummate the transactions themselves." The plaintiff's amended complaint is a further indication that our interpretation of the notice requirement set forth in the July 1962 agreement is correct.

We can perceive no error by the trial justice in granting the defendants' motion to dismiss and the subsequent entry of judgment.

The plaintiff's appeal is denied and dismissed. The judgment appealed from is affirmed.

*Joseph J. Roszkowski, Irving I. Zimmerman,* for plaintiff-appellant.

*Keefer and Kirby, Scott K. Keefer,* for defendants-appellees.