Arthur **BOURGOIN**

v.

George **FORTIER.**

Supreme Judicial Court of Maine.

Oct. 25, 1973.

Berman, Berman & Simmons by Jack H. Simmons, Robert A. Laskoff, Lewiston, for plaintiff.

Fales & Fales by Roscoe H. Fales, Lewiston, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, and ARCHIBALD, JJ.

WEATHERBEE, Justice.

On October 9, 1969 the Plaintiff, a licensed real estate broker, and the Defendant property owner executed a written contract which was to terminate exactly nine months later on July 9, 1970. This contract obligated the Plaintiff to find a purchaser for the Defendant's property in return for a ten percent commission of the sale price. In late June, 1970 the Defendant told the Plaintiff that he was taking the property off the market and would rent the premises. Shortly thereafter, nine days before the contract's end, the Defendant sold the property himself for $6,000 to a buyer whom the Defendant alone had procured. The Plaintiff never did produce a buyer for the property.

Feeling there had been a breach, the Plaintiff brought suit for his commission of ten percent, or $600. The Justice in the Superior Court, who heard this matter jury-waived, found for the Plaintiff in that amount, and the Defendant appealed to this Court.

We reverse the decision of the Superior Court and sustain the Defendant's appeal.

The parties' dispute centers around the effect to be given to the wording used in the written contract. Because it is the focus of our inquiry, the contract is recited below:

## "EXCLUSIVE LISTING AUTHORIZATION

TO: /s/ Arthur O. Bourgoin

In consideration of your listing, and of your efforts to find a purchaser for the property described hereon, which is made a part of this agreement, the undersigned, as owner, hereby gives the above named agent the exclusive right of sale or exchange to said property at the price and on the terms herein stated, or at any other price, terms or consideration which said

owner may authorize or consent to, and agrees to pay said agent a commission of 10% on said price, or any other price authorized or consented to by said owner.

Commissions on sales or exchanges shall be due and payable when a valid contract has been signed or when the transfer of title has been completed.

This listing agreement shall terminate 7–9–70 provided that no active negotiations are pending at the time for the sale or exchange through said agent.

If the property is sold or exchanged by the owner, direct, within six months after the termination of this agreement, to any party with whom the said agent has been negotiating, and who has been made known to the owner, then the said commission is to be paid to the said agent.

OTHER SPECIAL CONDITIONS—

Date: 10–9, 1969

Owners { /s/ George Fortier

Accepted by :——————, Agent"

The parties to this controversy disagree completely as to the interpretation to be given to this contract which governs their rights and obligations. The Plaintiff urges that this contractual language be construed as creating an "exclusive right to sell" which negates any sale by the owner until termination. The Defendant, on the other hand, views the contract as giving rise to an "exclusive agency" which allows the owner to sell his own property, if he himself procures a buyer, without liability for an agent's commission. The Justice in the Superior Court construed the contract as one which gave the broker an exclusive right to sell. The issue here has never before been squarely left for this Court's determination.[1]

1. There is no doubt that Maine courts have recognized the existence of both an exclusive agency and an exclusive right of sale. *See*

Goodwin v. Luck, 135 Me. 228, 194 A. 305 (1937) ; Clifford L. Swan Co. v. Porell, 143 Me. 358, 62 A.2d 530 (1948). The annota-

In construing contracts, the Court first seeks to ascertain the intentions of the parties to the agreement. *E. g.,* Corbett v. Noel, 160 Me. 407, 205 A.2d 165 (1964). However, these intentions may become clouded when the contractual wording is unclear and ambiguous. In such a case the contract is construed more strictly against the party who drew up the contract, for he has created the troublesome ambiguity. *E. g.,* Monk v. Morton, 139 Me. 291, 30 A.2d 17 (1943). In clarifying the ambiguity, the Court will look at the entire contract, including all its clauses, to decide what was the parties' intent. Palmer v. Nissen, 256 F.Supp. 497 (D.Me.1966). Moreover, words in a contract will be understood in their usual, common sense fashion and not as technical words of art unless it is apparent that a technical use was mutually intended. *See, e. g.,* Loose-Wiles Biscuit Co. v. Deering Village Corp., 142 Me. 121, 48 A.2d 715 (1946).

■ The current situation surely results from patently ambiguous language contained in the contract. The agreement contains phrases unmistakably labelled as "exclusive listing" and as "exclusive right of sale". These phrases, when understood in common parlance, are basically inconsistent in their effectuation of a relationship between a broker and an owner and are inconclusive in determining the rights of the parties. An exclusive listing, otherwise known as an "exclusive agency", does not allow an owner to list his property with other brokers during the contractual term but does not prevent the owner from selling to a buyer procured on his own. *See, e. g.,* Louis Schlesinger Co. v. Rice, 4 N.J. 169, 72 A.2d 197 (1950).

■ However, the exclusive right to sell forbids the owner from selling his property without liability while the property is listed with the broker even if the latter cannot find a buyer. Carlsen v. Zane, 261 Cal.App.2d 399, 67 Cal.Rptr. 747 (1968). Thus, a contract which purports to create both these relationships is ambiguous and difficult to interpret. As the contract was a form contract furnished by the Plaintiff, we are disposed to construe the agreement more strongly against the broker.

■ Additionally, we are persuaded as to the efficacy and fairness of the principle which holds that an exclusive right to sell, by its very nature, should be created only by clear and unambiguous language. The owner of property—frequently unfamiliar with the terminology of brokerage transactions—should not be held to give up the right to sell his own property unless this right is expressly negatived by the contract. Because an exclusive agency is generally understood to allow the owner to sell his land (paying the broker only if the broker found the ultimate buyer), we believe that the formation of an exclusive right to sell must be express and unambiguous. Therefore, one seeking to create an exclusive right to sell, in which the owner may not sell his property without paying the broker whether or not the broker procured the buyer, must do so in an express and unambiguous manner within the four corners of the contract. Only in this way can the often unwary and unsophisticated property owner be divested of his inherent right to sell land which he still owns. The rationale of this protective rule is expressed in the particularly cogent and well-reasoned opinion of the court in Nicholas v. Bursley, 119 So.2d 722 (Fla.Dist. Ct.App.1960).

■ The Plaintiff asserts by way of extrinsic evidence that the Defendant's

tion at 88 A.L.R.2d 936, 966 assumes that in Maine a broker under an exclusive right to sell can recover his commission for "any sale made" during the contractual term. *See* Mansfield v. Goodhue, 142 Me. 380, 53 A.2d 264 (1947). However, in that case the exclusive right to sell was evidently clearly es-

tablished, and there was merely a question of breach. In the instant case, great ambiguity exists, differentiating the present case from *Mansfield.* Here we are stating in what manner an exclusive right to sell must be created in order to foreclose an owner's right of sale.

planned rental, and eventual sale, of the property just prior to the end of the contract indicates that the Defendant really knew he had no right to sell. The Justice in the Superior Court interpreted the Defendant's conduct in his own sale of his house as an intentional deception of the broker for the purpose of avoiding the owner's contractual obligation to pay the broker's fee on the sale.[2] The establishment of the extrinsic fact that the Defendant deceitfully attempted to escape what in late June he considered to be a possible (or certain) liability for a broker's fee sheds little light on his understanding of his obligations under the ambiguous contract when he entered into it nearly nine months before. The Defendant may have resorted to deception believing that he had earlier been misled.

The Defendant's conduct is not enough to persuade us that the contract should be construed to give the broker an exclusive right to sell, especially in view of the application of the rules of construction we have discussed. By requiring the parties to make clear their intention to create an exclusive right of sale, we seek to avoid circumstances which may result in either misunderstanding or deception. As that intention was not manifested properly here, the Defendant was free to withdraw the property and sell it on his own to a buyer whom he solicited.

Because 1) the owner's right to sell is not expressly negatived, and 2) serious contractual ambiguities exist in a contract furnished by the broker, we sustain the Defendant's appeal.

The entry will be:

Appeal sustained.

All Justices concurring.

DELAHANTY, J., did not sit.

---

2. The Justice wrote:
"That the defendant recognized the existence of the contract cannot be denied. If he did not, why then did he call the plaintiff and advise that he then planned only to rent? Such conduct is open to only one reasonable interpretation: mislead the plaintiff."

As the record before us does not include the trial transcript, the Justice's findings of fact are taken as undisputed and they furnish the basis for our own recitation of facts.