PEELER INSURANCE & REALTY, INC. v. FRED HARMON

No. 7327SC640

(Filed 28 November 1973)

Brokers and Factors § 6— exclusive right to sell realty — owner's sale to agent's prospect — liability for commissions

Where a contract gave a real estate agent the exclusive right to sell the owner's property at a specified price and provided that the owner would pay the agent a commission of 5% of the sales price "if the property is sold or exchanged by you, by me, or by any other party before the expiration of this listing, at any terms accepted by me, or within three months thereafter, to any party with whom you or your representative have negotiated," the owner who sold the property in competition with the real estate agent to the agent's prospect is liable for the brokerage commission called for in the contract.

APPEAL by plaintiff from *McLean, Judge,* 27 March 1973 Civil Session CLEVELAND Superior Court.

In this action plaintiff seeks to recover brokerage commissions alleged to be due under a contract from defendant to plaintiff for the sale of certain lands belonging to defendant.

The parties stipulated that defendant executed the written contract alleged in the complaint. The contract is dated 1 April 1971, bears the heading "EXCLUSIVE LISTING CONTRACT," and contains the following provisions:

> "In consideration of your agreeing to list the above-described property for sale and in further consideration of your services and efforts to find a purchaser, you are hereby granted the exclusive right, for a period of 6 month(s) from date, to sell the said property for the price of $108,000 and on terms of all cash to me or upon such other terms and conditions as may be agreed upon later.

> "If the property is sold or exchanged by you, by me, or by any other party before the expiration of this listing, at any terms accepted by me, or within three months thereafter, to any party with whom you or your representatives have negotiated, I agree to pay you a commission of 5% of the gross sales price."

Plaintiff's evidence tended to show: C. M. Peeler, Jr., is the president of plaintiff corporation and had been in the real estate business in Cleveland County since 1961 when he was licensed as a real estate broker, his license being in effect continuously since that time. In 1971 Mrs. Marie Callahan was employed by plaintiff as a licensed real estate "salesman." At her request defendant executed the contract in question after which she advertised the subject property for sale and showed it to various persons including Mr. Camp. Following several conversations with him, Mrs. Callahan obtained from Camp a written offer (dated 18 June 1971) of $90,000 for the property. She communicated the offer to defendant who stated that he would not accept $90,000 for the property and pay a brokerage commission but that he would accept $90,000 net to him. Mrs. Callahan advised defendant that Camp would not pay more than $90,000, that she "could not afford to work for nothing," and that she would try to find another buyer for the property. Mrs. Callahan advised Camp that defendant had refused the offer

and that Camp would have to increase his offer in order to get the property. Camp informed Mrs. Callahan that he would not increase his offer and further stated that he was going to contact defendant directly about the property. Mrs. Callahan told Camp "that only the real estate agent was supposed to do that" but Camp stated that he did not care about that and restated his intention of talking with defendant.

The parties stipulated that in July 1971 defendant sold and conveyed the lands in question to Camp (and wife) for $90,000.

At the conclusion of plaintiff's evidence defendant's motion for a directed verdict, pursuant to G.S. 1A-1, Rule 50, was allowed and from judgment dismissing the action, plaintiff appealed.

*Yelton & Lamb, P.A., by Robert W. Yelton for plaintiff appellant.*

*Whisnant and Lackey by N. Dixon Lackey, Jr., for defendant appellee.*

BRITT, Judge.

Did the court err in allowing defendant's motion for directed verdict and dismissing the action? We hold that it did.

Brokerage contracts can be classified both as to type of listing and method of payment to the broker. The former category may be subdivided into two groupings: those in which the listing is exclusive and those in which the listing is nonexclusive. Likewise the latter category may be subdivided into two groupings: those in which the broker is to receive a percentage of the purchase price and those in which the broker is to receive everything he can get over a certain amount.

Our research fails to disclose a case from an appellate court of this State involving an exclusive listing contract. However, by stating that the particular contract in question was not an exclusive listing contract, it would appear that our Supreme Court has recognized the existence of this classification by implication. *Thompson v. Foster,* 240 N.C. 315, 82 S.E. 2d 109 (1954) and *Sparks v. Purser,* 258 N.C. 55, 127 S.E. 2d 765 (1962).

We are faced with the question, does the principal breach his contract by selling in competition with his broker who has

an exclusive listing? Before we can reach this question, how-
ever, we must first determine the nature of the exclusive listing
in this case. R. Lee, North Carolina Law of Agency and Partner-
ship, § 38, p. 54 (3d ed. 1967) indicates two types of "exclusive
agencies." The first of these is the true "exclusive agency," and
is denominated as such, which, ". . . precludes the principal
from hiring another agent to sell the same property, but it does
not preclude principal himself from procuring a customer with-
out paying compensation." The second of these is properly de-
noted an "exclusive right to sell" and, " . . . precludes the
principal himself from competing with the agent."

Although the term "exclusive right to sell" appears in the
portion of the contract in the case at hand quoted above, a read-
ing of the cases of other jurisdictions leads us to believe that
mere use of this term should not be determinative. Since the
right of alienation has become such an integral part of property,
it is only proper that the contract specifically negative this right
before it is lost. See Annot., 88 A.L.R. 2d 936 (1963) for a list-
ing of cases so indicating.

This brings us to the question of whether the terms in this
contract specifically negative the right of defendant to sell his
property in competition with his broker during the term of the
contract. We feel that they do and that such a holding is com-
patible with the general theory of the law of this State as
evidenced by those cases dealing with nonexclusive listings. The
clear meaning of the second quoted paragraph is that if the
property were sold by *anyone,* including the principal, at any
terms accepted by the principal, to someone with whom the
agency had negotiated, then the agency would be entitled to com-
pensation. In *DeBoer v. Geib,* 255 Mich. 542, 238 N.W. 226
(1931), "If, said property is sold . . . by you, by myself, or any
other person . . . , " was interpreted as giving an exclusive right
to sell. A similar passage was so interpreted in *Rubin v. Beville,*
132 So. 2d 783 (Fla. App. 1961). See also Annot., 88 A.L.R.
2d 936 (1963) for other cases so holding. The sale in this case
clearly falls within the term of the contract.

While the facts in *Realty Agency, Inc. v. Duckworth & Shel-
ton, Inc.,* 274 N.C. 243, 251, 162 S.E. 2d 486, 491 (1968), are
quite different from those in the case at hand, our holding finds
support, albeit in a negative way, in the following language by
Justice Sharp: " * * * This is not a situation in which an

owner, who has listed real estate with the broker at a specified price, reduces the price and sells it to the broker's prospect. When that occurs, clearly the broker is entitled to compensation. (Citations.)" See also *Aiken v. Collins*, 16 N.C. App. 504, 192 S.E. 2d 617 (1972).

We conclude that plaintiff's evidence was sufficient to withstand defendant's motion for directed verdict. The judgment appealed from is

Reversed.

Chief Judge BROCK and Judge CAMPBELL concur.