19974

DORMAN REALTY & INSURANCE COMPANY, INC., Respondent, v. Theta W. STALVEY and Jack Jones, Appellants

(212 S. E. (2d) 591)

*H. E. McCaskill, Esq.,* of Conway, *for Appellant,*

*John C. Thompson, Esq.,* of Conway, *for Respondent,*

March 13, 1975.

LITTLEJOHN, Justice:

Theta W. Stalvey, a resident of Columbia, was the owner of a 240 acre tract of land in Horry County. Her husband, David Stalvey, attended to the property and his actions were on her behalf and as her agent. About the last of Au-

gust or the first of September of 1970, Stalvey listed this 240 acre tract with the Dorman Agency, authorizing Dorman to bring about a sale. Dorman began advertising, making contacts, and taking those actions which a real estate broker normally takes in an effort to procure a purchaser.

On or about September 14, 1970, Stalvey became anxious to move the property in order to procure money for another investment and contacted Dorman's office, telling Mr. Hendrix (vice president of the company) that he was going to look for a buyer for the property himself. Stalvey testified positively concerning this conversation. Hendrix does not admit the conversation, but declines to deny it.

On September 17, 1970, Jack Jones went to Columbia and entered into a written contract with Stalvey to buy the property. Before signing the contract Stalvey informed Jones that the question of payment of a commission to Dorman might arise. Jones was going to New York and needed the contract that day. He told Stalvey, and later confirmed it in writing, that if it developed that Dorman were entiled to a commission he (Jones) would pay it. He still takes that position but contends that none is due.

On the following day, which was September 18, Dorman procured a written sales agreement from J. Watson Smith and mailed it to Stalvey in Columbia.

The sale to Jones was completed; obviously the proposed sale to J. Watson Smith was not completed. Neither Jones nor Stalvey paid Dorman a commission, and this action was brought by Dorman against both of them to recover $12,-000.00 allegedly due by reason of the oral contract whereby Stalvey listed the property with Dorman. The jury returned a verdict against both Jones and Stalvey in the amount of $12,000.00, representing 10% of $120,000.00, which was the price at which the property was listed with Dorman. Only Jones has appealed.

It is the theory of Dorman, as set forth in his complaint, that the oral contract to sell was an exclusive sales contract

such that a commission is due even though Stalvey himself sold the property.

On the other hand it is the position of Jones, as set forth in his answer, that the oral contract was an exclusive agency contract only, such that Stalvey could sell the property himself without paying a commission to Dorman.

And so the underlying issue to be resolved is the nature of the oral contract which existed between Dorman and Stalvey.

The Court has never been called upon to discuss and to distinguish "exclusive sales contracts" as contrasted with "exclusive agency contracts." The courts that have previously resolved such disputes have interpreted an exclusive sales contract to be an agreement that gives the realtor sole right to sell the property, and a commission must be paid even if the owner sells the land. Exclusive agency contracts have been determined to be agreements which merely prevent the owner from listing the property with other realtors. In exclusive agency contracts the owner is not prevented from finding his own buyer, and if he does he need not pay a commission. Annot. 88 A. L. R. (2d) 936 (1963).

Counsel for Jones moved for a nonsuit, for a directed verdict, and for judgment notwithstanding the verdict, contending at all stages of the proceeding in essence that the evidence was not susceptible of the inference that Stalvey had relinquished his own right to sell the property.

An owner's right to sell his own real estate is inherent and this right is retained even when a broker is employed, unless the contract provides in unequivocal terms or by necessary implication that the owner's right to sell has been relinquished. The right of an owner to sell his own property is an implicit condition of every contract of agency unless negatived.

It is obvious that both E. A. Dorman, president, and Hendrix, vice president of the company, are experienced in the matter of real estate sales contracts. In

their testimony they denominate the oral agreement an exclusive sales contract. Such is a conclusion on their part. In testifying relative to the contract neither recites anything which Stalvey said or did which warrants the conclusion that he (Stalvey) gave up, or intended to give up, his right to sell the property himself. Courts generally have held that the term "exclusive sales contract" even when used in a written agreement, is not necessarily determinative of the real nature of the contract. All of the circumstances must be considered. An agent may demand a commission growing out of a sale by the owner, only if he affirmatively proves that it was a part of the contract that a commission would be paid even if the owner himself sold the property.

We have searched the record and failed to find evidence warranting the conclusion that the oral contract was an exclusive sales contract. The agreement was no more than an exclusive agency contract for an indefinite period of time. There was nothing in the oral contract obligating Dorman to do anything. It was free to seek a purchaser or to do nothing. In effect the agreement was merely an offer or a unilateral contract, and Stalvey had the right to terminate the agency at any time before Dorman found a buyer.

Stalvey testified that on September 17, after the sales contract was signed, he reported the matter to Dorman's office. His testimony relative thereto is as follows:

"Q. Did you or not have any communication with Mr. Dorman on that same date?

"A. Which date?

"Q. 17th day of September.

"A. Yes, I called Mr. Dorman. It was late in the afternoon and told him to take it off the market because I had committed ourselves to sell it.

"Q. At that time did he tell you whether or not he had any prospect for it?

"A. Yes.

"Q. What did he say in that regard?

"A. He said, I don't have a deposit, but I have a commitment from a reliable source that wants the property, and I feel sure its going through. I said, well I am sorry but this has already been completed. He said I am sending you a contract. I said, well there won't be any need to. And, I think that's the gist of the conversation the best I can recall."

In testifying Mr. Dorman equivocated concerning the telephone call wherein Stalvey reported the contract with Jones, but the telephone records corroborate the fact that a phone call was made from the Stalvey residence to the telephone of Dorman. On cross-examination Dorman finally admitted "I can't deny that I talked with him on the 17th." He further said, in response to counsel's question:

"Q. Do you remember that he told you, 'I have signed an option on it'?

"A. He could have told me that he had signed an option."

The contract with Dorman was ended after Stalvey reported that a contract had been made with Jones.

Having held that Dorman failed to prove a necessary element of its complaint, it necessarily follows that the lower court should have directed a verdict in favor of the defendants.

It is unnecessary to discuss the other questions raised by the appellant. The case is remanded to the lower court for entry of judgment in favor of the defendants under rule 27.

Reversed.

Moss, C. J., and Lewis, Bussey and Ness, JJ., concur.