No. 48,225

PAUL E. FOLTZ and WILLIAM R. JUST, d/b/a TOWN AND COUNTRY REAL
ESTATE, *Appellant,* v. PAT BEGNOCHE, *Appellee.*

(565 P.2d 592)

Opinion filed June 11, 1977.

*Charles S. Arthur, III,* of Arthur, Green, Arthur & Conderman, of Manhattan, argued the cause. and was on the brief for the appellant.

*Grace A. Schroer,* of Manhattan, argued the cause, and was on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal from an order of the trial court holding that an "Exclusive Listing Agreement" prepared by a real estate agency did not give the realtors a right to a commission when the property listed was sold by the owner himself.

The only question presented on appeal is whether the "Exclusive Listing Agreement" entitled the realtors, as a matter of law, to a commission when the subject real property was sold during the listing period by the owner himself.

Pat Begnoche (defendant-appellee) owned a liquor store at 1100 Laramie, Manhattan, Kansas, which he wanted to sell. On January 16, 1975, Mr. Begnoche and Paul E. Foltz and William R. Just, d/b/a Town and Country Real Estate (plaintiffs-appellants), entered into a one-month "Exclusive Listing Agreement" drafted by Town and Country Real Estate or its agents. The agreement dated January 16, 1975, insofar as is material herein provides:

"EXCLUSIVE LISTING AGREEMENT

"In consideration of your agreement to list the following property, and to use your efforts in finding a purchaser, the undersigned owner hereby gives your agency the exclusive right until Feb 16, 1975 from date hereof, to sell BEG-NOCHE LIQUOR STORE 1100 LARAMIE MANHATTAN. KS for the sum of $32,000 and upon the following terms: CASH TO SELLER If a sale or exchange is made by you during the term of this exclusive agreement at the price and upon the terms specified herein, or at any other price and terms acceptable by me, or if you produce a purchaser ready, able and willing to purchase the property, or if sold or exchanged six months after the termination hereof to anyone with whom you have negotiated concerning the property and where I have known of such negotiations or been informed of them in writing, I agree to pay you a 6% commission on the gross sale price. In the event of an exchange, which within the meaning of this contract shall be deemed a sale, you are permitted to represent and receive a 6 % commission from each party."

Town and Country Real Estate produced two prospects who were unable to purchase the liquor store at the agreed cash price of $32,000. One prospect bid $30,000 which was not acceptable to Mr. Begnoche and the other had not lived in Riley County long enough to pass the requirements for an ABC liquor license.

On January 31, 1975, Mr. Begnoche contracted to sell the liquor store for $31,000 to Robert Webster, a prospect found by Mr. Begnoche. Nothing indicates Town and Country Real Estate had ever seen or talked to Mr. Webster concerning the purchase of the liquor store. The sale was closed on March 3, 1975, and Mr. Begnoche refused to pay any commission to Town and Country Real Estate or any of its agents.

The pleadings and pretrial presented but one issue to the trial court—the interpretation to be given the written "Exclusive Listing Agreement." Mr. Begnoche contended the "Exclusive Listing

Agreement" meant he would list the property with no other realtor, but that the agreement did not prevent him, as the owner, from selling the property without paying a commission. John Ball, Director of the Kansas Real Estate Commission, read the "Exclusive Listing Agreement." He submitted an affidavit stating the agreement's terms would permit the owner to sell his property without an obligation to pay the broker a commission.

Town and Country Real Estate contended under the "Exclusive Listing Agreement" if the liquor store was sold by anyone, including the owner, Pat Begnoche, Town and Country Real Estate was to receive a commission. Dean Toothaker, President of the Manhattan Board of Realtors and a licensed real estate broker, also read the "Exclusive Listing Agreement." He submitted an affidavit stating that he considered the terms of the agreement to give the real estate agency the exclusive right to sell the property prior to the expiration date, and did not allow anyone else, including the owner, to sell the property without paying a commission to the real estate agency.

The trial court held the contract was a listing agreement only, and it did not give the realtors an exclusive right to a commission if they were not instrumental in finding the purchaser. Appeal has been duly perfected.

The parties disagree completely as to the interpretation to be given to the "Exclusive Listing Agreement" which governs their rights and obligations. The appellants urge that the contractual language be construed to create an "exclusive right to sell," which entitles the broker to a commission even though the owner sells the property himself. The appellants argue such a construction is necessary so the real estate agent can spend the time and money necessary to sell the property without fear that it will be sold out from under him.

The appellee views the contractual language as giving rise to an "exclusive agency," which permits the owner to sell his own property if he himself procures a buyer, without liability for the broker's commission.

A distinction is frequently made between an "exclusive agency" and an "exclusive right to sell." (12 Am. Jur. 2d, Brokers, Sec. 226, p. 968; and Note, Real Estate Brokers Contracts in South Carolina, 18 S.C. L. Rev. 819, 832 [1966].) An "exclusive agency" agreement listing real property for sale does not permit an owner

to list his property with other brokers during the contractual term, but this does not prevent the owner from selling to a buyer procured on his own, unless the broker has procured a purchaser able and willing to buy prior to such time. The only effect of such a contract is to prevent the owner from placing the property in the hands of another agent. An "exclusive right to sell" agreement listing real property for sale forbids the owner from selling his property either by himself, or through another broker, without liability while the property is listed with the original broker. (*Moreno v. May Supply Company,* 280 Ala. 157, 190 So.2d 710 [1966]; *Carlsen v. Zane,* 261 Cal. App. 2d 399, 67 Cal. Rptr. 747 [1968]; *Bourgoin v. Fortier,* 310 A.2d 618 [Maine 1973]; *Insurance & Realty, Inc. v. Harmon,* 20 N.C. App. 39, 200 S.E. 2d 443 [1973]; *Zifcak v. Monroe,* 105 R.I. 155, 249 A.2d 893 [1969]; *Dorman Realty & Ins. Co., Inc. v. Stalvey,* 264 S.C. 94, 212 S.E. 2d 591 [1975]; and *Baker v. Skipworth,* 244 S.W. 2d 299 [Tex. Civ. App. 1951].)

In *Bourgoin v. Fortier,* supra, an agreement entitled "Exclusive Listing Authorization" which gave the broker the "exclusive right of sale or exchange" was held ambiguous and not an exclusive right to sell agreement. The reverse situation was presented in *Carlsen v. Zane,* supra, relied upon by the appellants. There the contractual agreement gave the brokers an "exclusive and irrevocable right to sell" land but specifically provided that "owner agrees to pay . . . brokers ten per cent of the selling price in the event that during the period of the agreement . . . said property is sold or exchanged by [brokers] or any other person including owner." This was held to be an "exclusive right to sell" because it *expressly* forbade sale by the owner without liability. (See also *Rankin v. Miller,* 179 Cal. App. 2d 133, 3 Cal. Rptr. 496 [1960].) Similarly *Holmes v. Holik,* 238 S.W. 2d 260 (Tex. Civ. App. 1951) and *Bagley v. Butler,* 59 Misc. 2d 1029, 301 N.Y.S. 2d 148 (1969), clearly and unambiguously forbid sale by the owner without liability.

Kansas cases have long recognized, at least by implication, the distinction between an "exclusive agency" and an "exclusive right to sell." In *Helling v. Darby,* 71 Kan. 107, 79 Pac. 1073, and *Haggart v. King,* 107 Kan. 75, 190 Pac. 763, the real estate brokers did not have an "exclusive right to sell" the land and could not recover commissions when the land was sold by the owner. (See

also *Kirshner v. Brown,* 78 Kan. 531, 96 Pac. 848; *Braniff v. Baier,* 101 Kan. 117, 165 Pac. 816; *Edwards v. Dana,* 104 Kan. 266, 178 Pac. 407; and *Russell v. Combs,* 108 Kan. 411, 195 Pac. 605.)

In *Krehbiel v. Milford,* 171 Kan. 302, 232 P.2d 229, the court sustained the following instruction as proper and correctly stating the law of the state:

" '. . . One giving a real estate broker authority to sell his property upon terms stated, but not expressly agreeing that such real estate agent shall have the exclusive right to sell, retains the right to effect a sale personally or through another agent, and the owner may enter into an agreement to sell which will be effectual at any time before he has actual notice that a purchaser has been procured by the agent who is ready, able and willing to purchase under the terms of the listing.' . . ." (p. 305.)

A similar instruction was approved in *Winkelman v. Allen,* 214 Kan. 22, 29, 519 P.2d 1377.

Similarly in *Hiniger v. Judy,* 194 Kan. 155, 398 P.2d 305, this court stated:

"Where one gives a real estate broker authority to sell his property upon terms stated but not expressly agreeing that such real estate agent shall have the exclusive right to sell, he retains the right to effect a sale personally or through another agent. . . ." (p. 167.)

However, this court has never expressly examined a contract similar to the one now before us and determined whether the contract established "exclusive agency" or an "exclusive right to sell."

In examining the contractual agreement before the court, it must first be recognized the agreement is entitled "Exclusive Listing Agreement." The title "Exclusive Listing Agreement" does not import that there is granted to the broker the exclusive right to sell. (*Neece v. AAA Realty Co.,* 156 Tex. 614, 616, 299 S.W. 2d 270 [1957].) Other cases have noted the title of the agreement is important, but not controlling. (*Bourgoin v. Fortier,* supra; *Nicholas v. Bursley,* 119 So.2d 722, 88 A.L.R. 2d 929 [Fla. Dist. Ct. App. 1960]; *Suddereth v. Putty,* 446 S.W. 2d 929 [Tex. Civ. App. 1969]; and *Insurance & Realty, Inc. v. Harmon,* supra.)

It must be conceded the contractual agreement before the court granted the broker the "exclusive right" until February 16, 1975, to sell the Begnoche liquor store. However, use of the phrase "exclusive right," standing alone, should not be determinative in creating an "exclusive right to sell." (*Insurance & Realty, Inc. v. Harmon,* supra; *Cowal v. Hopkins,* 229 A.2d 452 [D.C. Ct. App.

1967]; *Stromberg v. Crowl,* 257 Iowa 348, 132 N.W. 2d 462 [1965]; and *Bourgoin v. Fortier,* supra.)

Further examination of the contractual agreement discloses the provision:

". . . If a sale or exchange is made by you during the term of this exclusive agreement . . . I agree to pay you a 6 % commission. . . ."

That the phrase "by you" was inserted in the contract indicates the payment of commission is contingent upon the sale being made by the broker. By implication the agreement contemplated a sale or exchange by the owner, as no other realtor could make the sale without liability during the contractual period. (See *Moreno v. May Supply Company,* supra; and *Stromberg v. Crowl,* supra.)

A term in the agreement which cannot be ignored is:

"In consideration of your agreement *to list* the following property, and to use your efforts in finding a purchaser, the undersigned owner hereby gives *your* agency the exclusive right. . . ." (Emphasis added.)

By reason of the foregoing the disputed contractual agreement must be declared ambiguous. In Kansas it is well established that doubtful and uncertain language in a contract is construed against the party preparing the contract, for he has created the troublesome ambiguity. (*State v. Downey,* 198 Kan. 564, 569, 426 P.2d 55; *Hamann v. Crouch,* 211 Kan. 852, 856, 508 P.2d 968; and *Desbien v. Penokee Farmers Union Cooperative Association,* 220 Kan. 358, 363, 552 P.2d 917.) Analogous cases from other jurisdictions have consistently construed the ambiguity in brokers' contractual agreements against the party drawing the contract. (*Nicholas v. Bursley,* supra; *Stromberg v. Crowl,* supra; and *Bourgoin v. Fortier,* supra.) It is obvious from an examination of the contractual agreement in question that it was prepared by the realtors, and the trial court so found. As such we construe the "Exclusive Listing Agreement" herein to create only an "exclusive agency."

Additionally, we are persuaded that an "exclusive right to sell," by its very nature, should be created only by clear and unambiguous language. The owner of property, frequently unfamiliar with the terminology of brokerage transactions, should not be held to give up his right to sell his own property, unless the broker's contract in some way or other imposes liability upon the owner for payment of a commission in the event of a sale by the owner, either expressly or by the grant to the broker of such

exclusive right as the court may deem necessarily implies such liability. (See *Moreno v. May Supply Company,* supra; *Bourgoin v. Fortier,* supra; and *Nicholas v. Bursley,* supra.) Therefore, a real estate broker seeking to create an "exclusive right to sell" in which the owner may not sell his property without paying the broker a commission, whether or not the broker procured the buyer, must do so in clear and unambiguous language within the four corners of the written brokerage contract. For a comprehensive review of authorities on this subject, see Annot., 88 A.L.R. 2d 936 (1963); Note, Real Estate Brokers' Commissions in Ohio, 38 U. Cin. L. Rev. 115 (1969); Recent Developments, 42 Tenn. L. Rev. 405 (1975); and Note, Real Estate Brokers Contracts in South Carolina, 18 S.C. L. Rev. 819 (1966).

Here the "Exclusive Listing Agreement" did not clearly and unambiguously waive the owner's right to sell his own property.

The judgment of the lower court is affirmed.