BEASLEY-KELSO ASSOCIATES, INC. v. EDWIN W. TENNEY, JR.

No. 763SC282

(Filed 6 October 1976)

1. **Brokers and Factors § 6— exclusive right to sell property — no right of owner to co-broker property**

A contract which granted a real estate agent "the exclusive right . . . to negotiate for the sale of and to sell" the described real property, required the owner to refer to the agent any and all inquiries received by the owner with respect to the property, provided that the agent could co-broker the property, and provided that the agent would be entitled to a 10% commission if the owner sold the property to a purchaser procured by the owner or any other source constituted an exclusive right to sell agreement, and a further provision that no commission was due in the event the property was sold by a real estate company of which the owner was president did not contradict the other provisions of the contract and give the owner the right to co-broker the property.

2. **Brokers and Factors § 6— exclusive right to sell property — sale by third party**

The evidence supported the court's finding that property which plaintiff agent had the exclusive right to sell was actually sold by a

Beasley-Kelso Associates v. Tenney

third party real estate agent, not by the owner himself, and that plaintiff was entitled to a commission on the sale.

**3. Brokers and Factors § 6— exclusive right to sell property — purchaser procured by third party — right to commission**

Where a real estate listing agreement provided for a commission of 10% of the sales price if the property was sold by plaintiff agent or by someone other than the agent and a commission of only 5% if the owner referred the prospective purchaser to the agent, the agent was entitled to the full commission of 10% for the owner's sale of the property to a purchaser who was procured by a third party agent and who was not referred by the owner to plaintiff agent.

APPEAL by defendant from *Lanier, Judge.* Judgment entered out of session 9 December 1974 in Superior Court, CRAVEN County. Heard in the Court of Appeals 25 August 1976.

Defendant owned a 1154-acre tract of land in Pamlico County, which he had purchased in 1972. On 19 March 1974, he entered into a contract entitled "Exclusive Listing Agreement" with plaintiff, a real estate brokerage firm. The contract granted to plaintiff "the exclusive right, until noon 19 Sept., 1974, to negotiate for the sale of and to sell the real property" described for the price of $225 per acre. Other pertinent portions of the agreement are as follows (summarized except where quoted):

2. MARKETING: Agent (plaintiff herein) is to give owner the full benefit of its best judgment and advice with respect to the policy to be pursued in selling the property; list it with and solicit the full cooperation of the Multiple Listing Service of the New Bern Board of Realtors; advertise the property in such manner and such media as Agent might think would be most likely to engender the sale; take such further steps as in its judgment would enhance the sale of the property. Owner is to contribute nothing toward the cost of advertising and promotion.

3. REFFERALS: "During the term of this agreement, the Owner shall refer to the Agent any and all inquiries received by the Owner with respect to or concerning said property. The Agent shall diligently investigate each such inquiry as well as other inquiries or offers received or directed to the Agent and will use its best skills and efforts to procure a purchaser for such property."

4. FEE FOR PROFFESSIONAL SERVICES: "The Agent shall receive from the Owner a fee of (10%) of the sales price payable in cash at the time of the final settlement . . . in either of the following contingencies:

. . .

(i) If during the terms of this agreement a purchaser ready, willing and able to purchase the property for not less than the sale price and otherwise upon the terms and conditions stated herein or any other price, terms and conditions acceptable to Owner is procured by the Agent alone or with the assistance of another broker, but only in the event a written contract of sale is entered into between the Owner and such purchaser, provided the failure to enter into such contract is not due to willful default or refusal on the Owner's part;

(ii) If during the term of this agreement the Owner sells, leases, transfers or exchanges, or enters into a contract of sale, lease or exchange with respect to said real property with any person or corporation whatsoever, irrespective of the terms and conditions of sale, lease, transfer or exchange, notwithstanding such person or corporation was not procured by the Agent but was procured by the Owner individually or through any other source, the Agent shall be entitled to a fee computed at the rates above mentioned upon the consideration received or to be received by the Owner. The aforesaid amount shall be deemed earned and shall be due and payable without demand as of the date of the lease, transfer or conveyance of the property."

"8. OTHER PROVISIONS:

(1) No commission in event Ed Tenney & Co. sells this property.

(2) Send owner all reasonable offers.

(3) Any referral by owner is on 5% commission."

Subsequent to the parties' entering into the agreement, and on 14 May 1974, defendant entered into an agreement entitled "Offer to Purchase" with one D. K. Appleton by which he agreed to sell the property to Appleton for a total consideration of $185,000, and on 28 May 1974, the parties closed the transaction. At the closing, one Maria Rich, a licensed real agent,

not employed by plaintiff or defendant, received a check in the amount of $9,250. Plaintiff was not paid any commission on the sale of the land and brought this action to recover commissions allegedly due under the contract between plaintiff and defendant. The matter was tried before the court without a jury. The court found facts and concluded that plaintiff is entitled to a commission of 10% of the sales price, or $18,500. Defendant appealed.

*Ward, Tucker, Ward & Smith, P.A., by Michael P. Flanagan, for plaintiff appellee.*

*Levine and Stewart, by Michael D. Levine, for defendant appellant.*

MORRIS, Judge.

Under G.S. 1A-1, Rule 52(a), the court, where the action is tried upon the facts without a jury, is required to find the facts and state separately his conclusions of law thereon. It is the province of the court, as the trier of facts, to determine the credibility of witnesses and the weight of their testimony and the reasonable inferences to be drawn therefrom. "If different inferences may be drawn from the evidence, he determines which reasonable inferences shall be drawn and which shall be rejected." *Knutton v. Cofield,* 273 N.C. 355, 359, 160 S.E. 2d 29, 33 (1968). Accord, *Hodges v. Hodges,* 257 N.C. 774, 127 S.E. 2d 567 (1962); *Laughter v. Lambert,* 11 N.C. App. 133, 180 S.E. 2d 450 (1971). The judge becomes both judge and jury, and his findings of fact have the force and effect of a jury verdict and, if supported by competent evidence, are conclusive on appeal even though the evidence might sustain findings and conclusions to the contrary. *Coggins v. City of Asheville,* 278 N.C. 428, 180 S.E. 2d 149 (1971); *Laughter v. Lambert, supra.*

We must, therefore, look at the findings of fact of the court against the evidence presented. The court first listed the undisputed facts, including the ownership by defendant of the property, the entering into of the agreement attached as Exhibit A and incorporated by reference in the judgment; the execution by defendant on 14 May 1974 of an offer to purchase which was delivered to defendant on 14 May 1974 by Maria G. Rich, a duly licensed real estate agent not an employee of Ed Tenney & Associates, Inc.; the conveyance of the land by de-

fendant on 28 May 1974 under the offer to purchase agreement; that the purchaser was represented at closing by an attorney; that Maria Rich was paid $9,250 commission as a result of the sale; that a closing statement was prepared bv purchaser's attorney and that it showed a pavment to Edwin Tennev, Jr., of $25,497.86 and that other than that disbursement and the check to Maria Rich, no other disbursements were made; that the provisions of the agreement between plaintiff and defendant entitled "Exclusive Listing Agreement" dated 19 March 1974 were the total and complete agreements between the parties; that defendant was president of Ed Tenney & Associates, Inc., during 1974 and was a duly licensed real estate broker in the State of North Carolina at all times material to this action; that the words "Ed Tenney & Co." in paragraph 8(1) of the contract refers to Ed Tenney & Associates, Inc., a corporation duly licensed as a real estate brokerage firm in North Carolina; that the purchase price paid for defendant's land was $185,000.

Facts found by the court from the evidence were as follows:

"4. That Edwin W. Tenney, Jr., and Beasley-Kelso Associates, Inc., are each entities with experience in the real estate listing and real estate sales fields, and that Edwin W. Tenney, Jr., is an officer of the North Carolina Real Estate Licensing Board.

5. That on or about March 19, 1974, Edwin W. Tenney, Jr., and H. E. Allen, an employee and salesman with Beasley-Kelso Associates, Inc., met in the offices of Beasley-Kelso Associates, Inc., New Bern, North Carolina, and at such date and place entered into the Exclusive Listing Agreement designated as plaintiff's pretrial 'Exhibit A.'

6. That subsequent to the execution of the agreement, employees of Beasley-Kelso Associates, Inc., attempted to procure a purchaser for said tract and obtained a written offer to purchase the tract from Charles H. Ashford and J. D. Harrah for a price of One Hundred Seventy-Three Thousand One Hundred Ninety Dollars ($173,190.00), a copy of said offer to purchase being plaintiff's trial 'Exhibit C'; that Edwin W. Tenney, Jr., was aware of the terms of the offer to purchase by Ashford and Harrah prior to the 14th day of May, 1974, and the said offer to purchase from

Ashford and Harrah was mailed to Edwin W. Tenney, Jr., prior to the 14th day of May, 1974.

7. That on or about May 12 or May 13, 1974, Maria G. Rich contacted Edwin W. Tenney, Jr., with respect to the 1,154 acre tract, inquired whether the same was available for sale and as to what the purchase price of the property would be; and that upon being informed of the terms of sale by Tenney, she then contacted Appleton with respect to this exact tract and that as a result of the contacts between Maria G. Rich and Edwin W. Tenney, Jr., Maria G. Rich obtained a written Offer to Purchase for the total price of One Hundred Eighty-Five Thousand Dollars ($185,-000.00) from D. K. Appleton to Tenney, a copy of said Offer being plaintiff's pre-trial 'Exhibit B'.

8. That the Appleton Offer to Purchase was typed on a North Carolina Board of Realtors standard form No. 5, said form bearing the designation at the bottom thereof of 'Maria Rich Real Estate Company, Commercial-Residential-Farm Acreage'; that said Offer to Purchase provided in Paragraph 2 under 'Other Conditions' that 'a 5% commission is to be paid to broker by seller'; that Maria G. Rich executed said Offer to Purchase as escrow agent to acknowledge receipt of an earnest money deposit by Appleton and took a check made by Appleton for such deposit and the written Offer to Purchase to Edwin W. Tenney, Jr., at his Durham office on May 14, 1974; that the aforesaid Offer to Purchase was executed by Edwin W. Tenney, Jr., as seller.

9. That prior to meeting with Maria G. Rich on the 14th day of May, 1974, Edwin W. Tenney, Jr., had informed her that the Offer to Purchase signed by Appleton had to be in his office by noon on the 14th day of May, 1974, in order to be accepted by him because he was expecting an Offer to Purchase the property from someone else.

10. That the purchase of said property was closed and title was transferred from Edwin W. Tenney, Jr., to Appleton's assignee, Appleton Farms, Inc., in May 28, 1974, and that at said closing Maria G. Rich was present and received payment of Nine Thousand Two Hundred Fifty Dollars ($9,250.00) for her real estate commission fee, said money being deducted from the cash proceeds otherwise due Edwin

W. Tenney, Jr., and the only other disbursement made at such closing was to Edwin W. Tenney, Jr., as shown on plaintiff's trial 'Exhibit D'.

11. That Beasley-Kelso Associates, Inc., was not and has not been paid any real estate commission with respect to the transaction between Edwin W. Tenney, Jr., and Appleton and Appleton Farms, Inc.

12. That the Exclusive Listing Agreement between Edwin W. Tenney, Jr., and Beasley-Kelso Associates, Inc., provided that Beasley-Kelso Associates, Inc., would be the agent and would receive from Edwin W. Tenney, Jr., a fee of ten percent (10%) of the sales price at the time of settlement if during the term of the agreement Edwin W. Tenney, Jr., sold, transferred, or exchanged or entered into a contract of sale or exchange with any person or corporation whatsoever, irrespective of the terms and conditions of sale and 'notwithstanding such person or corporation was not procured by the agent (Beasley-Kelso Associates, Inc.) but was procured by the owner individually or through any other source.'

13. That an exception to the provision made reference to in the next above paragraph was that 'no commission in event Ed Tenney & Co. sells this property.'

14. That it is a normal and customary practice as an accommodation or courtesy in the real estate business when a real estate broker owns property and lists it with another broker for the owning broker to retain the right for himself and the real estate agency with which he is associated to sell the property, and that in such case, if the owning broker sells the property, there will be no commission due the listing broker.

15. That 'co-brokering', as that term is used in the real estate business, is the act of a listing and selling broker sharing a real estate commission, the listing broker having obtained the listing and the selling broker having found the prospect.

16. That 'co-brokering' is a normal, customary and usual practice in the real estate business only when the listing broker has the exclusive right to sell or an exclusive agency to sell the property with or without specified exceptions;

that Paragraph 2 of the Exclusive Listing Agreement not only allowed Beasley-Kelso Associates, Inc., to co-broker the property but required such co-brokering; that the Exclusive Listing Agreement did not give Ed Tenney & Associates, Inc., the right to co-broker the property.

17. That the usual and customary meaning of the word 'sell' as used in the real estate broker context is the bringing of a buyer and a seller together resulting in a contract.

18. That Maria G. Rich brought Appleton and Tenney together for the 1,154 acre tract of land which resulted in a contract between them which resulted in the sale of the property and transfer of title on May 28, 1975, which date was within the period specified in the Exclusive Listing Agreement.

19. That the Exclusive Listing Agreement provided that if at any time during the term of the agreement any person other than those excepted sold the property, Beasley-Kelso Associates, Inc., would be entitled to a fee of ten percent (10%) of the sales price of such sale, and Beasley-Kelso Associates, Inc., is entitled to ten percent (10%) of One Hundred Eighty-Five Thousand Dollars ($185,000.00), or Eighteen Thousand Five Hundred Dollars ($18,500.00).

20. That Beasley-Kelso Associates, Inc., did not breach any of the terms of the Exclusive Listing Agreement and carried out its obligations thereunder and that Beasley-Kelso Associates, Inc., brought this action in good faith to collect the commission due it and said action was brought without spite or ulterior motive."

Defendant excepted to that portion of No. 6 finding that the offer from Ashford and Harrah was mailed to defendant prior to 14 May 1974, and assigned this as error, but the assignment of error and exception on which it is based is not brought forward and argued by defendant in his brief. It is, therefore, deemed abandoned. *State v. Watson*, 287 N.C. 147, 214 S.E. 2d 85 (1975); *Knutton v. Cofield, supra*. Defendant also excepted to findings 12, 16, 17 and 19 and these exceptions are properly assigned as error and brought forward and argued by defendant.

[1] He discusses his exceptions to findings 12 and 16 together, and we shall do the same. These two exceptions raise the pri-

mary question involved in this appeal. By inserting the language contained in paragraph 8(1), did defendant reserve unto himself the right to co-broker the property? Defendant insists that that is the only interpretation to be given the contract. He concedes that if paragraph 4(ii) were alone applicable, p'aintiff would be entitled to a commission under the undisputed facts of this case. However, he strenuously urges that paragraph 8(1) contradicts and overrides paragraph 4(ii). We cannot agree. "A construction which neutralizes one provision should not be adopted if the contract is susceptible of another which gives effect to all its provisions." *DeBoer v. Geib*, 255 Mich. 542, 544, 238 N.W. 226 (1931).

This Court, in *Peeler Insurance & Realty, Inc. v. Harmon*, 20 N.C. App. 39, 200 S.E. 2d 443 (1973), recognized the distinction between an "exclusive agency" real estate listing agreement, which prohibits the owner from selling the listed property through the agency of another broker during the listing period, and an "exclusive right to sell" agreement (exclusive sales contract) which prohibits the owner from selling either personally or through another broker without incurring liability for a commission to the original broker. See *Carlsen v. Zane*, 261 Cal. App. 2d 399, 67 Cal. Rptr. 747 (1968). In *Peeler* this Court found the contract to be an "exclusive right to sell" agreement from language not nearly so strong and unambiguous as the contract before us. Here the language used was "[t]he Owner grants to the Agent the *exclusive right,* until noon 19 Sept. 1974, to negotiate for the sale of and to sell the real property" described. (Emphasis added.) It further required the owner to refer to the agent any and all inquiries received by the owner with respect to the property and provided that the agent could co-broker the property and that if the owner sold the property to a purchaser procured by the owner *or any other source,* the agent would be entitled to a 10% commission on the purchase price which would be due and payable without demand as of the date of conveyance of the property by the owner. The language of the contract to this point is unambiguous and clearly indicates an "exclusive right to sell" agreement.

Paragraph 8(1) does not, we think, contradict the other provisions of the contract. To give it the interpretation contended for by defendant would completely neutralize the provisions of paragraph 4(ii). It would seem beyond the realm of practicality that plaintiff would enter into a contract re-

Beasley-Kelso Associates v. Tenney

quiring him to co-broker the sale of the property, pursue a course of advertising in the usual media, list it with the multiple listing service—all at no expense to the owner—if he were going to allow owner to co-broker the sale of the property at no commission to the plaintiff, original broker. To do so would afford the agent no protection whatever.

There was evidence that in the real estate business when a real estate broker owns property and lists it with another broker it is not unusual for the listing broker to grant to the owning broker the right to sell the property without paying commission to the listing broker. This was the subject of finding of fact No. 14 to which defendant did not except. There was evidence that this was the custom and practice in order to protect the salesman and employees of the owning broker and their clients.

There was also evidence that when this is done, there is no right in the owning broker to co-broker the sale of the property. Both parties to this contract were well versed in the custom and practices of real estate brokers. At defendant's direction, the provisions of paragraph 8 were written in longhand by plaintiff's employee and became a part of the contract. By those provisions, defendant retained the right to sell the land himself and also provided that in the event of a referral by owner, as was required by paragraph 3, the referral would be "on 5% Commission." Obviously, this did not contradict or neutralize paragraph 3. It simply gave the owner an additional right. We are of the opinion and so hold that there was ample competent evidence to support findings 12 and 16 and the inferences the court drew from the evidence with respect thereto.

[2] Defendant contends that if the contract did not give him a right to co-broker, he is not, nevertheless, liable for a commission to plaintiff, because he actually sold the property himself. Defendant does not except to the court's finding that Maria Rich brought the purchaser and defendant together for the sale of the tract and that a contract between them resulted from this contact "which resulted in the sale of the property and transfer of title on May 28th 1975, which date was within the period specified in the Exclusive Listing Agreement." Defendant does except to the court's finding that "the usual and customary meaning of the word 'sell' as used in the real estate broker context is the bringing of a buyer and a seller

together resulting in a contract," and to the court's conclusion that "within the period of said agreement the tract was sold by Maria G. Rich, a third party broker." There is ample evidence in the record that real estate brokers considered property sold when they had obtained "a contract on the property." Certainly it is the law in this State that when a real estate broker procures a purchaser who is accepted by the owner, and a contract is entered into between them, the broker has earned a commission even though the sale may not actually be consummated. *Harrison v. Brown*, 222 N.C. 610, 24 S.E. 2d 470 (1943), quoting 8 Am. Jur., Brokers, § 186, p. 1099. Additionally, the contract between plaintiff and defendant evidences their intent that the meaning of the word "sell" is the same as is included in the court's finding. In paragraph 4 of the contract, it was provided that plaintiff would become entitled to a commission for selling the property if, during the term of the agreement, "a purchaser ready, willing and able to purchase the property . . . upon the terms and conditions stated herein or any other price, terms, and conditions acceptable to Owner is procured by the Agent alone or with assistance of another broker, but only in the event a written contract of sale is entered into between the Owner and such purchaser . . . "

Maria Rich testified that she had a purchaser interested in that type of land but at that time did not know whether the Tenney property was listed and if so, with whom; that she had had prior dealings with that property many times previously; that she called defendant and told him she had a man she thought would buy the land for a certain price; that defendant told her what he would take; that she made 3 or 4 telephone calls that night, "back and forth on the phone, to Don Appleton and Ed Tenney and came up the next day with a contract and a check for $10,000.00." The contract was on her form. She testified: "I typed the contract up the night before I went to Ed's office, on my form; I told Ed that I was using the standard North Carolina Realtor's Offer to Purchase form." At defendant's office the next day, additional calls were made and additions were made to the contract. The closing was held in Bayboro at which time the purchaser, his attorney, Maria Rich, and defendant were present. Maria Rich received a 5% commission, based on the sales price of the property. She testified that she received only half the normal commission and considered herself to be a co-broker, defining co-broker as "someone that

is working with another broker." We think the evidence clearly supports the conclusion that Maria Rich sold the property.

[3]   Finally defendant argues that the court erred in determining the amount of commissions due. He contends that, at most, defendant should be required to pay plaintiff a commission of 5%, the amount plaintiff would have received had defendant referred to plaintiff the prospective purchaser procured by Maria Rich. The undisputed fact is that defendant did not refer as required by the contract. While it is true the damages awarded in cases where exclusive broker agreements have been breached may be the full commission provided in the listing agreement, *Carlsen v. Zane, supra,* here the contract provides for the payment of a fee of 10% of the *sales price* in the event the property is sold by someone other than the agent. The parties entered into a stipulation that the sales price was $185,000. Normally the measure of damages for breach of contract is that amount which will put the parties in the same position they would have occupied had there been no breach. *Fulcher v. Nelson,* 273 N.C. 221, 159 S.E. 2d 519 (1968). The court correctly computed the amount due plaintiff by defendant.

Defendant has also brought forward and argued certain exceptions to the admission of testimony. We have examined all such exceptions and find that none constitutes prejudicial error.

Affirmed.

Judges VAUGHN and CLARK concur.