MATTHEW F. POWERS AND RACHEL P. REESE, INDIVIDUALLY, AND AS CO-EXECUTORS OF THE ESTATE OF FANNIE B. POWERS, PETITIONERS v. LOUIS P. FALES; KATHLEEN P. COX; FRANCES P. MUNSE; JUDITH P. PERRY; A. M. POWERS, JR.; MABLE P. PREVATTE; OLLIN POWERS; THOMAS POWERS AND JAMES POWERS, RESPONDENTS

No. 8216SC304

(Filed 5 April 1983)

1. **Evidence § 45— nonexpert testimony as to value**

Nonexpert witnesses were properly permitted to give their opinion as to the equality in value of several parcels of land involved in a partitioning proceeding where each of the witnesses had been upon the land in question and had demonstrated a business background which would permit the formation of an intelligent opinion.

2. **Partition § 7— fairness of division—supporting evidence**

The evidence in a partitioning proceeding supported the trial court's determination that the division of the land was fair and equal although appellants' expert appraisers ascribed different values to the parcels than did the commissioners.

APPEAL by respondents from *Britt, Judge.* Judgment entered 15 December 1981 in Superior Court, ROBESON County. Heard in the Court of Appeals 9 February 1983.

This action concerns the distribution of real property inherited by the eleven children of Avery M. Powers, who died intestate on 9 November 1953. Following the death of Avery M. Powers, the eleven children executed a deed to their mother, Fannie B. Powers, conveying to her a life estate in all of the real property owned by Avery M. Powers at the time of his death. Fannie B. Powers died testate on 4 February 1977, and the co-Executors of her will brought this action seeking, among other things, to have three commissioners appointed "to allot and to award owelty in the division of the real property of Avery M. Powers, deceased, in accordance with the said [L]ast [W]ill and [T]estament of Fannie B. Powers, deceased."

*John Wishart Campbell for respondent appellants.*

*I. Murchison Biggs, P.A., by I. Murchison Biggs, for petitioner appellees.*

BECTON, Judge.

I

Procedurally, this case is complicated by the fact that Fannie B. Powers, who had been granted only a life estate in the real property of Avery M. Powers, sought in her Last Will and Testament, to influence the disposition of the real property following her death. Relevant portions of Item V of Fannie Powers' will read:

> Although the land which I now possess is mine only for the term of my natural life and I am unable to to say which part of the land will [go] to any of my children at my death, I have certain wishes regarding the home which I now occupy and the home which I previously occupied that I hope my children will respect. I realize that this is not compulsory on them but if my children will respect me when living and my memory when I am dead they will comply with this request.
>
> It is my request that in the division of the lands between my eleven children that my son M. F. Powers will get the new home which I now occupy and that the other children will let him have it on the basis of $20,000.00. It is my further desire that my son Thomas A. Powers shall get the old home and outbuildings formerly occupied by me and my late husband and that the other children will let him have it on a basis of $1200.00.
>
> My reason for making these requests is not that I love either one of my children more than another because I love each the same, but my two sons lived on the farm and continue to live on the farm and I desire that these homes be theirs.

In a written document executed in July 1977 some of the children agreed "that, as to their respective interest [sic] in said property, the wishes of Mrs. Fannie B. Powers, as expressed in Item V of her Last Will and Testament . . . shall be observed, and

to that end agree[d] to request that the Court shall direct the commissioners appointed to make partition of said land, to allot said lands and to award owelty in said division in accordance with the Last Will and Testament of Fannie B. Powers, deceased."

In this context, the co-Executors instituted this proceeding seeking (a) to have the parties who signed the July 1977 agreement named as petitioners; (b) to have the clerk appoint three commissioners to divide the land in accordance with Fannie B. Powers' express will; or (c) alternatively, to have the matter transferred to superior court for a declaratory judgment with regard to the distribution of the property. Some of the children filed Replies to the Petition, contending that Item V of the Will was "void and of no legal effect, for the reason that the said Fannie B. Powers owned no greater than a life estate in the real property . . . ."

The case was heard in superior court, and the superior court, after establishing the relative rights of the parties and after concluding that the children who had signed the July 1977 agreement were bound by that agreement, remanded the matter to the Clerk with the following directions:

that said Clerk shall immediately proceed to appoint Commissioners for the partitioning of the lands of Avery M. Powers, deceased, among the Petitioners and Respondents herein; and that said Clerk shall order and direct the Commissioners so appointed that, if it can be done without injury to any party, they should so divide the lands that the portion allotted to Matthew F. Powers be allotted so as to include the new home built by Mrs. Fannie B. Powers on said lands, and occupied by her during the latter years of her life; and that the portion allotted to Thomas A. Powers be allotted so as to contain the old home of Mrs. Fannie B. Powers, with any outbuildings associated therewith. The Clerk will further direct the Commissioners that the portions allotted to Matthew F. Powers and Thomas A. Powers will be allotted without taking into consideration the value of the buildings located thereon; and that said Commissioners be further directed to determine the fair market value of these buildings separately from the lands and to assess an owelty payable to Mable P. Prevatte, Kathleen P. Cox and A. M.

Powers, Jr., based upon such fair market value. The Commissioners shall further be directed to assess an owelty payable to Louise P. Fales, Rachel P. Reese, Judith P. Perry, Thomas Powers, James Powers, Frances P. Munse and Ollin Powers by Matthew F. Powers based upon a valuation of said buildings at $20,000.00 as provided in the Will of Fannie B. Powers, deceased. The Commissioners will further be directed to establish an owelty payable by Thomas A. Powers to Rachel P. Reese, Louise P. Fales, Judith P. Perry, James Powers, Frances P. Munse, Ollin Powers and Matthew F. Powers based upon a valuation for said buildings of $1200.00 as provided in said Will.

Commissioners were appointed by the Clerk as provided by N.C. Gen. Stat. § 46-7 (1976), and, after being sworn, met on the premises and partitioned the land. Although four of the children filed exceptions to the Report of the Commissioners, the Clerk, after hearing evidence offered by the parties, concluded that the Commissioners' partitioning resulted in a division of the land into "equal shares in point of value as nearly as may possibly be done," and confirmed the Report. The four children then appealed to superior court, and the superior court, after a hearing *de novo*, also concluded that the Report of the Commissioners resulted in a division of land "into equal shares in point of value as nearly as may possibly be done," and confirmed the Report. From that order the four children appeal to this Court.

## II

Although the procedural history is confusing, resolution of this appeal is simple. Appellants make only two arguments on appeal, and we conclude that the evidence supports the conclusion that the division of the land was fair and equal and that the judgment appealed from should be affirmed.

At the superior court hearing, Johnny Nobles, a registered surveyor, and R. W. Wilkins, a banker (two of the three commissioners), testified about their survey of the land and about their trips to view the land in order to make a fair division. In describing how he and the commissioners sought to divide the land equally, R. W. Wilkins testified:

We went around the property on two or three occasions, rode around it; went in some of the buildings, and then went back

> around, and we met four times, I believe, or five, and we got
> our figures together, and I got mine, Jimmy Neal got his,
> Johnny got his, and we come [sic] to the conclusion and opin-
> ion that the way we divided it was fair and equal. We tried
> to take the wooded land, the cleared land, the road frontage
> and balance it up so that each parcel, as we saw it, was an
> equal, as equal in value as you could come to make it. It is
> my opinion today that it's equal and fair.

Johnny Nobles, the surveyor, testified that the commissioners
divided the property into eleven parts, ascribing a value of
$45,260 to each share. He further testified:

> The figures that were used for this, basically, were on the
> paved highways, a road front value of one acre deep of $1,500
> per acre. The remainder, woodland, including the timber, at
> $500 an acre, and the branch and swamp land at $250 per
> acre. Then we have our best grade of crop land at $800, mid-
> dle at $700, and poorest class at $600 per acre. And on the
> soil, secondary roads, $1,000 per value per acre was placed on
> the road fronts, one acre deep along that road. These were
> the basic figures that were used and compiled under the com-
> mission. . . .
>
>          . . . .
>
>          . . . We were trying to arrive at those equal values ex-
> clusive of the two houses that we had been directed by the
> court to value separately. The value of the two houses that
> Thomas and Mack Powers were living in were [sic] not includ-
> ed in the division of the estate.

The testimony of these two Commissioners was not the only
testimony concerning value before the court. The Commissioners'
testimony was buttressed by the testimony of four other
witnesses who accompanied one or more of the Commissioners to
the land. These witnesses—a tobacco warehouseman and
businessman, a bank trust department farm manager, a timber
and land merchant, and a former A.S.C.S. employee and
farmer—opined that the parcels in the division were equal in
value.

[1]  Considering this evidence before the trial court, we set forth
the applicable law. First, non-experts can give opinion as to value

of property. When "(1) the witness is familiar with the thing on which [he] professes to put a value and (2) . . . has such knowledge and experience as to enable him intelligently to place a value on it," he may testify as to his opinion of value. *Britt v. Smith*, 6 N.C. App. 117, 122, 169 S.E. 2d 482, 486 (1969). Each of the witnesses listed above, before giving his opinion as to the equality in value of the several parcels of land involved in this partition, had been upon the land in question and had demonstrated a business background which would permit the formation of an intelligent opinion.

[2] Second, the fact that the appellants' expert appraisers ascribed different values to the parcels than did the Commissioners is not determinative even though appellants' expert witnesses ascribed values ranging from $66,909 to $150,607. Initially, and by way of example, the $150,607 value ascribed to tract number 8 includes improvements to the tract in the form of the brick home found on the property and two brick storage buildings. The Commissioners valued the house separately. More important, the trial judge, as fact-finder, rejected the discrepancy in values and found that the parcels were equal in value. Because we have concluded that that finding is supported by competent evidence, it is conclusive on appeal, even though the evidence might sustain findings and conclusions to the contrary. *Beasley-Kelso Associates, Inc. v. Tenney*, 30 N.C. App. 708, 228 S.E. 2d 620, *cert. denied*, 291 N.C. 323, 230 S.E. 2d 675 (1976). The trial judge as fact-finder must determine the credibility and probative force of the witnesses' testimony. As stated in *West v. West*, 257 N.C. 760, 762, 127 S.E. 2d 531, 532 (1962), "where an actual partition of lands has been ordered, whether the division made by the commissioners was fair and equitable or unequal in value is a question of fact to be determined by the Judge of the Superior Court upon an appeal from a judgment of the clerk affirming the report of commissioners." [Citations omitted.]

The trial court's conclusion that the Commissioners divided the land into equal shares in point of value as nearly as possible is supported by the evidence and the judgment below is

Affirmed.

Judges WEBB and PHILLIPS concur.