ROBERT WAYNE CLARK and wife, VALINA LYNNE CLARK, Plaintiffs,
v.
KRISTEN SUTTON and JOSH BARE, Defendants.
No. COA09-1118.
Court of Appeals of North Carolina.
Filed May 18, 2010.
Bunch, Robins & Stubblefield, LLP, by Thomas D. Robins, for plaintiffs-appellants.
No brief filed on behalf of defendants-appellees.

UNPUBLISHED OPINION
ROBERT C. HUNTER, Judge.
Plaintiffs Robert Wayne Clark and Valina Lynne Clark appeal from the trial court's order modifying a prior custody order and granting custody of minor Dylan Ray Bare to his mother, defendant Kristen Sutton. The Clarks primarily argue on appeal that the trial court's findings of fact are insufficient to support its conclusion of law that substantial changes in circumstances had occurred affecting the minor child's welfare and that modification of custody was in the best interest of the child. We conclude, however, that the trial court's material findings support its conclusion. Accordingly, we affirm.

Facts
Ms. Sutton and defendant Josh Bare (collectively, "defendants") are the biological parents of Dylan Ray Bare. Ms. Sutton had Dylan when she was 17 years old. Prior to Dylan's birth, Ms. Sutton's mother abandoned her. Her father sexually assaulted her and committed suicide shortly before Dylan was born. During the first six months of Dylan's life, defendants lived in an apartment with very little furniture and no transportation. During this time, defendants used their residence as a place to have parties with their friends and use illegal drugs, including marijuana and crystal methamphetamine. Dylan was in the apartment during the parties and while the illegal drugs were being used.
In March 2004, defendants allowed Amanda Clark, plaintiffs' daughter, to take Dylan to her parents' house and baby-sit him. The Clarks were concerned about Amanda having Dylan. In March 2004, the Clarks started baby-sitting Dylan on a regular basis until September 2004.
In August 2004, the Clarks took Dylan to the beach and when they returned to drop off Dylan at defendants' residence on Grant Street, the Clarks noticed that the home was filled with people and beer bottles. Mrs. Clark told Ms. Sutton that she did not believe that the home was suitable for Dylan. Ms. Sutton responded that she intended to take Dylan out of that home. Later that month, on 10 August 2004, Mrs. Clark returned to defendants' home and found it dirty, with food on the walls and piles of trash in the house. Mrs. Clark told defendants that she was concerned that the Department of Social Services might try to take custody of Dylan. Mrs. Clark told defendants that she would keep Dylan until defendants could "get their life together." She also volunteered to help drive Mr. Bare to work and Ms. Sutton to school. On 20 August 2004, defendants moved into a new home on Plummer Avenue. The Clarks paid the rent and utility deposits and provided defendants with a washer and dryer.
Not long after moving into the Plummer Avenue house, defendants started having parties. Defendants moved out of the house on 15 November 2004 because they were unable to pay rent. Around this same time, Mr. Bare went to jail and he and Ms. Sutton separated. They have remained separated since that time. Since 14 November 2004, Dylan has lived with the Clarks. The Clarks arranged for day care and began speech therapy for Dylan.
Ms. Sutton moved in with a friend in Browns Summit, North Carolina, on 15 November 2004 and lived there until sometime in February 2005. Ms. Sutton then moved into an apartment in High Point, North Carolina. From 15 November 2004 through 2005, Ms. Sutton visited with Dylan only sporadically, at one point having no contact with the Clarks for a month and a half.
On 2 July 2005, Ms. Sutton was involved in an automobile accident. After the accident, Ms. Sutton "began to improve herself and her living conditions." She began working on obtaining her GED and graduated in August 2006. At least once a month after the accident, Ms. Sutton visited with Dylan at the Clarks' house.
After an alleged threat by Mr. Bare to take Dylan away from the Clarks, they filed a complaint on 21 December 2005 seeking custody of Dylan. An ex parte order was entered on 21 December 2005, granting temporary custody of Dylan to the Clarks. Mrs. Clark told Ms. Sutton that they were seeking custody of Dylan to prevent Mr. Bare from taking Dylan.
On 3 January 2006, the Clarks and defendants met at the Randolph County District Court. The Clarks and Ms. Sutton executed a consent order giving the Clarks custody of Dylan and providing Ms. Sutton with visitation on every other Saturday from 10:00 a.m. until 6:00 p.m. Mr. Bare did not sign the consent order.
Under the consent order, Ms. Sutton first visited with Dylan on 7 January 2006, and since that time, she has continued to regularly visit with Dylan. Ms. Sutton missed only a few visits due to being sick and one visit to attend a required class for her CNA certification. The Clarks did not permit Ms. Sutton to reschedule the visit.
On 9 January 2006, the Clarks and defendants executed a consent order agreeing that grounds existed to terminate Mr. Bare's parental rights with respect to Dylan. Mr. Bare signed the consent order, relinquishing his rights to custody or visitation with Dylan. The trial court entered the consent order on 10 January 2006.
Since the entry of the 3 January 2006 order, the Clarks have not permitted Ms. Sutton to have an overnight visit with her son. In February 2006, Ms. Sutton began asking the Clarks for more visitation with Dylan, including overnight visits. Beginning on 4 March 2006, the Clarks allowed Ms. Sutton to visit with Dylan on Wednesdays. Although the Clarks wanted the visits to take place at their home, Ms. Sutton did not feel comfortable with that arrangement and the visits took place at a city park. In June 2006, the visits were switched to Thursdays.
On 1 October 2006, Ms. Sutton moved into her current residence, where she lives with her fiancé, Josh Cobb, and their daughter, Deanna. On 4 October 2006, Mrs. Clark visited Ms. Sutton's home and Ms. Sutton showed her that Dylan would have his own bedroom. Since 4 October 2006, the Clarks have not allowed Ms. Sutton any additional visitation beyond that specified in the 3 January 2006 order. Ms. Sutton has repeatedly asked the Clarks for additional visitation with Dylan.
Ms. Sutton filed a motion on 18 May 2007 seeking custody of Dylan. On 19 September 2007, the Clarks filed a petition to terminate defendants' parental rights ("TPR") with respect to Dylan. After the Clarks voluntarily dismissed their TPR petition on 20 March 2008 and filed a second TPR petition on 12 September 2008, trial was set for 24 October 2008 to hear both the Clarks' TPR petition and Ms. Sutton's motion for custody.
After the 24 October 2008 hearing, the trial court entered an order on 22 January 2009, in which it determined that the 3 January 2006 order was a permanent custody order. The trial court determined, however, that there had been a substantial change in circumstances affecting Dylan's welfare and that modification of the 3 January 2006 custody order and awarding custody of Dylan to Ms. Sutton was in the best interest of the child. The court ordered that Ms. Sutton have custody of Dylan and that the Clarks have visitation every other weekend. After filing a notice of appeal from the trial court's 22 January 2009 order, the Clarks filed a motion to stay the trial court's order pending review by this Court. In an order entered 2 June 2009, the trial court denied the Clarks' motion for a stay.

Modification of Custody Order
In arguing for reversal of the trial court's 22 January 2009 custody order, the Clarks contend that the court erred in modifying its 3 January 2006 custody order and granting custody of the minor child to Ms. Sutton. When reviewing a trial court's order modifying custody, the appellate court must determine whether the trial court's findings are supported by substantial evidence and, in turn, whether the court's findings support its conclusions of law. Shipman v. Shipman, 357 N.C. 471, 474, 586 S.E.2d 250, 253 (2003). If supported by substantial evidence, the trial court's findings are conclusive on appeal, despite the existence of evidence that might support contrary findings. Pulliam v. Smith, 348 N.C. 616, 625, 501 S.E.2d 898, 903 (1998). The trial court's conclusions of law are, however, reviewed de novo. Scott v. Scott, 157 N.C. App. 382, 385, 579 S.E.2d 431, 433 (2003). "`[T]he trial court is vested with broad discretion in cases involving child custody,' and its decision [to modify custody] will not be reversed on appeal absent a clear showing of abuse of discretion." Karger v. Wood, 174 N.C. App. 703, 705, 622 S.E.2d 197, 200 (2005) (quoting Pulliam, 348 N.C. at 624-25, 501 S.E.2d at 902) (second alteration added).
N.C. Gen. Stat. § 50-13.7(a) (2009) provides that "an order of a court of this State for custody of a minor child may be modified or vacated at any time, upon motion in the cause and a showing of changed circumstances by either party or anyone interested." The party moving for modification of a custody order assumes the burden of showing a substantial change of circumstances affecting the welfare of the child. Blackley v. Blackley, 285 N.C. 358, 362, 204 S.E.2d 678, 681 (1974). In determining whether modification of a custody order is warranted, the trial court engages in a two-step analysis: the trial court first determines whether there has been a substantial change in circumstances affecting the welfare of the child involved, and, if so, the trial court then determines whether modification of custody is in the child's best interest. Shipman, 357 N.C. at 474, 586 S.E.2d at 253.

I. Substantial Change of Circumstances
In determining whether a substantial change of circumstances has occurred, the Supreme Court has explained that
courts must consider and weigh all evidence of changed circumstances which affect or will affect the best interests of the child, both changed circumstances which will have salutary effects upon the child and those which will have adverse effects upon the child. In appropriate cases, either may support a modification of custody on the ground of a change in circumstances.
Pulliam, 348 N.C. at 619, 501 S.E.2d at 899.
Here, the Clarks maintain that the trial court failed to make sufficient findings in support of its conclusion that "[s]ince the entry of the January 3, 2006 order there has been a substantial change in circumstances [a]ffecting the welfare of the minor child, Dylan Ray Bare." We note that the Clarks did not assign error to the trial court's ultimate finding that a substantial change in circumstances had occurred and that the change affected the child's welfare. Nor did the Clarks assign error to the trial court's material findings establishing that change.
These unchallenged findings, binding on appeal, Koufman v. Koufman, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991), establish that after an automobile accident on 2 July 2005, Ms. Sutton "began to improve herself and her living conditions." After the accident, Ms. Sutton stopped using illegal drugs and "resumed work on her GED and graduated in August of 2006." She also "began visiting with the minor child at least once a month." After the parties entered into the consent order on 3 January 2006, Ms. Sutton regularly visited her child every Saturday, according to the terms of the order, and missed only a few visits due to illness and attending a required class to obtain her CNA certification. Ms. Sutton has had "consistent employment for the past two years." Ms. Sutton has had stable housing since 1 October 2006, living with her fiancé, Josh Cobb, and their daughter, Deanna. The court also found that the child has "bonded" with his mother, Mr. Cobb, and his half-sister, and that he has a "good, loving relationship with" each of them. Based on its findings, the court ultimately determined that "there has been a substantial change in circumstances [a]ffecting the welfare of the minor child" and that Ms. Sutton "is a fit and proper person to have the custody of the minor child . . . ."
These findings reflecting Ms. Sutton's changes to her lifestyle, including remaining drug-free, continuing her education, obtaining stable housing and employment, and bonding with her child through visitation, adequately support the trial court's conclusion that a "substantial change of circumstances" had occurred. See Simpson v. Simpson, 149 N.C. App. 440, 445, 562 S.E.2d 447, 450 (2002) ("[T]he reformed lifestyle of a parent who was not originally awarded custody of the child can form the basis of a modification of custody."); Brewer v. Brewer, 139 N.C. App. 222, 232-33, 533 S.E.2d 541, 549 (2000) (concluding mother's "major lifestyle improvements," including stopping using illegal drugs, marrying her current husband who had stable employment and showed affection for children, obtaining stable employment, and attending parenting classes, "constitute[d] a substantial change in circumstances").
The Clarks nonetheless challenge the trial court's finding that "there is no evidence of illegal drug use by the defendant Sutton since 2004[,]" pointing to Ms. Sutton's testimony that she did not stop using illegal drugs until "October of `05." While the Clarks are correct that the trial court misstated the time at which Ms. Sutton stopped using illegal drugs, as the appellants, they "must not only show error, but . . . must also show that the error was material and prejudicial, amounting to denial of a substantial right that will likely affect the outcome of an action." Starco, Inc. v. AMG Bonding and Ins. Services, 124 N.C. App. 332, 335, 477 S.E.2d 211, 214 (1996). The Clarks make no argument on appeal that the trial court's misstatement constitutes prejudice warranting reversal.
In any event, the evidence indicates, as reflected in the trial court's other findings, that Ms. Sutton stopped using drugs prior to the Clarks ever obtaining legal custody of the child and has remained drug-free since October 2005. We, therefore, fail to perceive any prejudice resulting from the trial court's erroneous statement in its finding. See In re Clark, ___ N.C. App. ___, ___, 688 S.E.2d 484, 496 (2010) ("After careful review of the challenged findings, we conclude that they either have sufficient record support or that any deficiencies in the evidentiary support for these findings of fact did not prejudice the Clarks."); In re Estate of Mullins, 182 N.C. App. 667, 670-71, 643 S.E.2d 599, 601 ("In a non-jury trial, where there are sufficient findings of fact based on competent evidence to support the trial court's conclusions of law, the judgment will not be disturbed because of other erroneous findings which do not affect the conclusions." (internal citation and quotation marks omitted)), disc. review denied, 361 N.C. 693, 652 S.E.2d 262 (2007).
The Clarks further assign error to the trial court's finding regarding a purported threat made by Mr. Bare: "Mrs. Clark testified, but the court does not find as a fact, that the defendant Bare called her in December 2005 and threatened to come and take the child. The court notes that the defendant Bare did not testify to this." The Clarks argue that since Mrs. Clark testified about the alleged threat by Mr. Bare, the trial court should have found that the threat did, in fact, occur.
Where, as here, the trial court sits without a jury, the court is required to "weigh and consider all competent evidence, and pass upon the credibility of the witnesses, the weight to be given their testimony and the reasonable inferences to be drawn therefrom." In re Whisnant, 71 N.C. App. 439, 441, 322 S.E.2d 434, 435 (1984). As the fact-finder in bench trials, "the court is empowered to assign weight to the evidence presented at the trial as it deems appropriate." In re Oghenekevebe, 123 N.C. App. 434, 439, 473 S.E.2d 393, 397 (1996); accord Powers v. Fales, 61 N.C. App. 516, 521, 301 S.E.2d 123, 126 (1983) ("The trial judge as fact-finder must determine the credibility and probative force of the witnesses' testimony.").
Here, Mrs. Clark testified that Mr. Bare, during a phone conversation in December 2005, threatened to come over to the Clarks' house and take the minor child. Mr. Bare, however, testified that he had not had any contact with the Clarks between the time he and Ms. Sutton ended their relationship in November 2004 and the current proceedings, except for a visit around "Christmas time" to see how the child was "doing." He indicated that the Clarks did not try to stop him from visiting with Dylan and that during the visit, he told the Clarks that he thought Dylan was "doing great" living with them.
Where, as here, "different inference[s] may be drawn from the evidence, [the trial court] alone determines which inferences to draw and which to reject." In re Hughes, 74 N.C. App. 751, 759, 330 S.E.2d 213, 218 (1985). Issues of credibility and the weight to be given to witness testimony "must be resolved by the trial court and are not a basis for overturning a finding of fact." Elliott v. Muehlbach, 173 N.C. App. 709, 714, 620 S.E.2d 266, 270 (2005); accord Lin v. Lin, 108 N.C. App. 772, 775, 425 S.E.2d 9, 10-11 (1993) ("If the evidence allows different inferences to be drawn therefrom, the trial judge determines which inferences shall be allowed, and this determination is binding on the appellate courts."). The trial court was free to find  and apparently did find  Mrs. Clark's testimony about the threat not credible. In any event, we fail to perceive how a threat by Mr. Bare is relevant to the issue of whether Ms. Sutton met her burden of proving that a substantial change of circumstances had occurred affecting the welfare of the child.
The Clarks also take issue with the trial court's finding regarding Mrs. Clark's testimony regarding the child's behavior relating to visits with Ms. Sutton:
Mrs. Clark testified, but the court does not find as a fact, that after the defendant Sutton began visiting with minor child under the January 3, 2006 order the minor child started having nightmares and wetting the bed and would not let Mrs. Clark out of his sight and did not want to visit with the defendant Sutton. Mrs. Clark also testified, but the court does not find as a fact[,] that these actions of the minor child continue to the present time.
Similar to their argument regarding the trial court's finding regarding the purported threat by Mr. Bare, the Clarks argue that the court should have found, based on her testimony, that the child had and continues to have nightmares, wets his bed, and will not let Mrs. Clark out of his sight. Mrs. Clark's testimony raises issues of credibility and the weight to be accorded her testimony, which are for the trial court, not an appellate court, to resolve. Elliott, 173 N.C. App. at 714, 620 S.E.2d at 270.

II. Welfare of the Child
The Clarks next argue that even if a substantial change of circumstances occurred, the trial court's findings do not support its conclusion that the change affected the welfare of the child. The Clarks maintain that the court's findings fail to adequately establish the necessary "connection" between any substantial change of circumstances and its affect on the child's welfare. In support of their argument, the Clarks point to Shipman, 357 N.C. at 478, 586 S.E.2d at 255, where the Supreme Court held: "[B]efore a child custody order may be modified, the evidence must demonstrate a connection between the substantial change in circumstances and the welfare of the child, and flowing from that prerequisite is the requirement that the trial court make findings of fact regarding that connection."
In the very next paragraph of Shipman, however, the Supreme Court explained that "[w]here the `effects of the substantial changes in circumstances on the minor child . . . are self-evident,' there is no need for evidence directly linking the change to the effect on the child." Lang v. Lang, ___ N.C. App. ___, ___, 678 S.E.2d 395, 398 (2009) (quoting Shipman, 357 N.C. at 479, 586 S.E.2d at 256); accord Karger, 174 N.C. App. at 709, 622 S.E.2d at 202 (affirming modification of custody order where trial court's consideration of effect of substantial change of circumstances was "implicit" in its findings when "examin[ing] the entire order").
In this case, as explained in Shipman and Lang, the effect of the substantial change in circumstance on the welfare of the child is "self-evident": as a consequence of Ms. Sutton's remaining drug-free, continuing her education, obtaining stable housing and employment, and having a daughter with her fiancé, the minor child has "bonded" with Ms. Sutton, Mr. Cobb, and his half-sister, and has a "good, loving relationship with" each of them. This evidence, reflected in the trial court's findings, are more than sufficient to establish the "connection" between the substantial change in circumstances found by the trial court and its effect on the minor child. See Simpson, 149 N.C. App. at 445-46, 562 S.E.2d at 450 (holding trial court's determination that a substantial change of circumstances occurred affecting the welfare of the child, thus warranting modification of custody, where findings showed that mother had "significantly" changed her life by stopping using drugs, had become focused on her family, including having another child, and child had "developed a close relationship" with mother, her new husband, and their new child).
The Clarks, however, argue that the trial court's conclusion is not supported by its findings because the trial court made no findings regarding the "minor child's circumstances at the time of the trial." In support of its conclusion that a substantial change in circumstances affecting the welfare of the child had occurred, the trial court found that since the entry of the 3 January 2006 custody order, Ms. Sutton has visited with her child almost every Saturday in accordance with the order; that Ms. Sutton has requested additional visitation, but the Clarks did not permit additional visitation after 4 October 2006; that Ms. Sutton has received her GED and has stable employment; that Ms. Sutton moved into her current residence on 1 October 2006 and has been living there since that time; that Ms. Sutton got engaged to Mr. Cobb and that they had a daughter in the fall of 2006; and, that Dylan has developed a loving relationship with his mother, her fiancé, and his half-sister. These findings, undisputed on appeal, are sufficient to show that the trial court properly considered the child's circumstances at the time of trial in determining whether the change affected the child's welfare.
The Clarks further contend that the trial court failed to properly consider the recommendations of Dr. Donald Winters, a certified developmental pediatrician. They claim that although the court found that the only information Dr. Winters received regarding the child's "relationship" with Ms. Sutton and the child's behavior "before and after visitation" with Ms. Sutton "has been told to him by Mrs. Clark[,]" the court "made no findings of fact about the remainder of Dr. Winter's [sic] testimony."
The Clarks are incorrect. In 10 other findings, the trial court stated that Dr. Winters testified as an expert in developmental and behavioral pediatrics and that Dr. Winters first met the child in November 2004, when the child first started living with the Clarks; that Dr. Winters believed that the child "might not have had enough stimulus during the first year of his life" and that he was "concerned with the child's speech development"; that "any move or change in custody will upset the development of children, including speech development"; that Dr. Winters was "concerned with the child's anxiety" and believed that the child suffered from post-traumatic stress disorder, caused by "the visits with the defendant Sutton"; and that "visitation with the defendant Sutton should not be increased." The trial court further found, with respect to Dr. Winters' testimony, that he has "never met with the minor child without Mrs. Clark being present"; that he has "never seen the minor child with the defendant Sutton"; that he has never spoken or met with Ms. Sutton; and that Dr. Winters "testified that he does not know whether the minor child bonded with the defendant Sutton." Thus, contrary to the Clarks' argument, the trial court did, in fact, make findings indicating that it properly considered Dr. Winters' testimony.

III. Best Interest of the Child
The Clarks finally argue that the trial court erred in concluding that "[i]t is in the best interest of the minor child, Dylan Ray Bare, that the January 3, 2006 order be modified." In violation of Rule 28(b)(6) of the Rules of Appellate Procedure, the Clarks fail to cite any authority in support of their argument. In any event, where, as here, the appellate court "determine[s] that the trial court has properly concluded that the facts show that a substantial change of circumstances has affected the welfare of the minor child and that modification was in the child's best interests, [the appellate court] will defer to the trial court's judgment and not disturb its decision to modify an existing custody agreement." Shipman, 357 N.C. at 475, 586 S.E.2d at 254. As we have concluded that the trial court's unchallenged findings of fact support its conclusions of law, we defer to the trial court's determination that modification of custody in this case is in the child's best interest. We have considered the Clarks' remaining arguments and find them unpersuasive. We, therefore, affirm the trial court's order.
Affirmed.
Judges CALABRIA and HUNTER, Robert N., Jr. concur.
Report per Rule 30(e).